THE FARMERS' MUTUAL FIRE INSURANCE COMPANY OF GRA-
TIOT AND ISABELLA COUNTIES V. LOUISA GARGETT.

| 42 | 389 |
| 93 | 51 |
| 94 | 270 |
| 42 | 289 |
| 110 | 243 |
| 42 | 289 |
| s 3NW | 954 |
| 133 | 6479 |

*Fire insurance—Burning insured property—Waiver of conditions—
Ownership—Presumption as to instructions to jury.*

An assured person being called on to account for the fire by which
the insured property was destroyed, suggested that it might have
originated in some oiled shavings in a lumber room in the cellar.
*Held* that there was no evidence in this suggestion, that the
assured had set fire to the property.

Where an attempt was made to remove a piano from a burning
house, it was *held* that a suggestion by the person assured 'to
let it burn, it was well insured,' would be a significant fact to
fix on her the guilt of setting the property on fire, if it were
not that it was conceded that the policy did not cover the piano,
and there was no evidence that it was insured at all, and that
there was evidence that what she did actually say was that 'it
might better burn,' the fact being that the by-standers were
about to knock its legs off with an axe in order to save it.

A fire insurance company, being sued for the amount of a loss,
sought to show that the person assured had burned the property,
and the judge charged that the burden of proving that she com-
mitted the crime was on the company. The evidence showed,
however, that she had made great exertions to save that which
was insured. *Held* that such a charge would have been errone-
ous if there had been evidence on which to ground it, as it would
have implied that the evidence of guilt must have been as conclu-
sive as if the assured were on trial for the crime; but that, as it
was, the defense were not entitled to any charge on that ques-
tion, and the instruction was immaterial, the verdict being for
the assured.

Where the by-laws of an insurance company provide that there
shall be no waiver of the terms of the policy without the con-
currence of the Secretary of the company, indorsed or specifi-
cally acknowledged, it was *held* that if the Secretary signed
orders for payment, on the adjustment of the loss, it should be
regarded as a very conclusive waiver in writing, if he knew all
the facts.

The by-laws of an insurance company provided that all claims should
be forfeited if there was any fraud in making proofs of loss.
*Held* that if the person assured, in good faith and with the
knowledge of the company's responsible officer included as her
own, articles belonging to other members of the family, there
was no fraud; and that if the directors, knowing all the facts,

42 MICH.—37.

gave orders for payment of the policy, any conditions that might have been insisted on, were waived.

Where it is apparent that the record gives the evidence only in condensed form, the appellate court cannot assume that tho trial judge misstated it in charging the jury, even though his charge varies from the evidence as set forth, so long as it does not appear that his attention was called to the alleged misstatement at the time, or the record does not put the fact of misstatement beyond question.

Error to Gratiot.    Submitted Oct. 29.    Decided Nov. 29.

Assumpsit.    Defendant brings error.

*Fancher, Dodds & Partridge* and *Jas. K. Wright* for plaintiff in error, cited *Security Ins. Co. v. Fay*, 22 Mich., 468; *Van Buren v. St. Joseph County F. Ins. Co.*, 28 Mich., 398; *American Ins. Co. v. Gilbert*, 27 Mich., 429; *Hartford F. Ins. Co. v. Davenport;* 37 Mich., 609; *Hartford F. Ins. Co. v. Reynolds*, 36 Mich., 502, to the point that the Secretary of the company could not verbally waive the conditions of the company's by-laws; where a representation amounts to a warranty, it makes no difference how far knowledge of the insured interest was material to the insurer, *Pierce v. Empire Ins. Co.*, 62 Barb., 636.

*T. W. Whitney* and *R. C. Dart* for defendant in error. If a general agent of an insurance company knows the real condition of the risk when the contract of insurance is entered into, no misrepresentation of it in the application or policy will avoid it, Wood on Insurance, 279, § 141; *Guardian's Life Ins. Co. v. Hogan*, 80 Ill., 35; *Roberts v. Continental Ins. Co.*, 41 Wis., 321; a statement in the application, that the assured is the owner of the property, is merely a warranty that he has an insurable interest, *Rockford Ins. Co. v. Nelson*, 65 Ill., 415.

Cooley, J.    Defendant in error, who is the wife of James Gargett, brought suit against the insurance company to recover the amount of two drafts drawn by the

company upon its treasurer, one for $1000 and the other for $500, in settlement of a loss which she had suffered under a policy of insurance against fire which the company had issued. The policy bore date February 24, 1875, and the property insured was described therein as "dwelling house on section 34" in Pine River township, and "contents therein." The dwelling was insured at $2000, and the contents at $1000. The insurer was a mutual insurance company, and all who received policies became members. The policy was expressly made subject to all the conditions and regulations specified in the charter and by-laws. Among the provisions of the by-laws was one that if there be any fraud, or false swearing with fraudulent intent in making proofs of loss, the claimant should forfeit all claims.

After the fire, the date of which is not given in the record, the directors of the insurance company met to consider the loss. Proofs were presented to them, and a schedule of the contents of the house, which were destroyed. This, it is conceded, included articles aggregating in value $153 which belonged to Mrs. Gargett's daughter and son-in-law, though described in the sworn statement as her own. Whether the directors of the insurance company were aware, when the adjustment was made, that Mrs. Gargett did not own all the articles, was made a question on the trial, and there was some positive evidence that they did not. In the adjustment a considerable reduction was made from the amount insured, but whether this was by way of compromise or not, was disputed. One of the directors testified that $500 was deducted from the insurance upon the house because it was believed to be over-insured, and from the personal property it seems that items to the amount of sixty or seventy dollars were first deducted, and then one-fifth of the whole taken off. These deductions considerably exceeded the value of the articles Mrs. Gargett did not own. The explanation of the deductions is very meager, and the basis is not satisfactorily shown by either side.

The insurance company seems to have made some effort to fix upon Mrs. Gargett the charge of burning her own house, but we look in vain through the evidence for anything to go to the jury on that branch of the case. When called upon to account for the fire, she suggested that it might have originated in some oiled shavings in a lumber room in the cellar, but there was certainly no evidence of crime on her part in this suggestion. Several persons testified that at the fire, when an attempt was made to remove a piano from the house, Mrs. Gargett told them to let it burn—it was well insured. This would be a very significant fact were it not for the circumstance that it was conceded on both sides the piano was not covered by this policy, and there was no evidence it was insured at all; so that, if the statements had been made as testified, the conclusion of corrupt motive would be far-fetched. On the other hand there was evidence that the removal of the piano was found impossible unless some part of it was first knocked off with axes, and that what Mrs. Gargett actually said was, in substance, that it might better burn. All the evidence of her conduct at the time of the fire went to show that she made great exertions to save the insured property. We do not think that in this state of the evidence the defense had a right to require the judge to charge the jury on any hypothesis which would warrant them in finding that Mrs. Gargett burned her own property, and the charge which the judge made, that "this being a matter set up by the defendant for the purpose of avoiding the payment of the loss, the burden of proof is on it to establish to your entire satisfaction that she is guilty of committing the crime," was in this case immaterial. Had there been evidence calling for a charge on the subject, the one actually given might perhaps have led the jury to infer that they must have the same conclusive evidence of guilt that would be essential if Mrs. Gargett were on trial for the crime; and this would have been erroneous and misleading. But on the case

as it stood, the defense was entitled to no charge on the subject.

The insurance company claimed on the trial that Mrs. Gargett forfeited all right to recover on the policy by including in it and in the proofs of loss, as her own, the property belonging to her daughter and son-in-law. This claim was made under a by-law of the company which provided that "there shall be no waiver or evasion of any of these terms or conditions without the concurrence of the secretary of the company indorsed thereon, or otherwise specifically acknowledged by him." William Yerrington was secretary, and the evidence bearing on any waiver by him previous to the adjustment consisted in that of Mr. Gargett that he asked Yerrington if the policy covered the daughter's property, and Yerrington replied it would cover all that was ordinarily kept in the house. The date of this conversation was not given, but it is assumed in the charge that it was when the policy was issued. The secretary was not called as a witness to deny this. He however signed the orders given on the adjustment, and these should be regarded as a very distinct and conclusive waiver in writing if the secretary then knew all the facts.

Upon this branch of the case the circuit judge charged the jury as follows:

"If Mrs. Gargett included in the policy goods not belonging to her with intent to defraud the insurance company, and purposely concealed who the true owner was, and represented them to be actually her property, and did it with the clear intent to cheat and defraud the company, her policy was void; but if at the time the application was made she said to the secretary of the company that she had these goods and was not the owner, and he informed her that she could include them in the insurance as her property, and she acted on the information relying upon his advice, she cannot be said to have intended in any way to defraud the company, because she got her information from the general agent of the company who represented the company in making the insurance. Any act she may have done in accordance with or in pursuance of that information cannot be said to be an intentional fraud upon the company.

And if acting upon that information at the time of the settlement of the loss, she included these articles in her schedule of property lost, she cannot be said to have intended any fraud upon the company. It would at most do nothing more than to reduce the amount of insurance by the amount of the loss paid on those articles." But "if the plaintiff put these articles in the policy and in the sworn statement of the loss without the knowledge of the company or their agent, knowing that she had no right so to do, and by those means she actually deceived the company, and she did it with that intent, then it operated as a fraud upon the company and rendered the policy void." "And should you find that there was no intentional fraud on the part of Mrs. Gargett, and it was through a mistaken idea that she put these goods belonging to her daughter in the schedule, and she thought she had a right to put them in, and the company did not know it, then the daughter's loss, $153, should be deducted from the face of the orders, and the verdict, if for the plaintiff, should be for the balance and interest."

This charge, it is claimed, conflicts with the views of this court expressed in *Van Buren v. St. Joseph etc. Ins. Co.*, 28 Mich., 398, and other cases previously decided. We think there is no conflict.

It is to be observed that there was no enumeration of the disputed articles in the policy. Mrs. Gargett only insured the "contents" of her dwelling; and the policy in terms, therefore, was not objectionable. The fraud, if any, would be made manifest only when there was an attempt to collect insurance on contents not belonging to the insured. But if she then scheduled articles belonging to other members of her family, in good faith and with the knowledge of the secretary of the company, she was certainly guilty of no fraud in so doing; and under the by-laws it is only fraud that is to avoid the policy. And if the directors settle with knowledge of all the facts, and give orders for the payment, any conditions that might previously have been insisted upon are waived by the most formal act the nature of the case would admit of.

There is in the charge one sentence that perhaps is not well founded. It is this: "Should you find that

the directors knew or had reason to know that some of the things in the house belonged to the daughter or son-in-law, and with that in view made a deduction from the whole amount of $500, partly in consequence of these goods, as I understand Mr. Giddings says his understanding was, then no fraud was practiced on the company." Now Mr. Giddings, who was one of the directors, testified to a deduction of $500 on account of over-insurance on the house, and to a still further deduction; but the record does not show that he said this or any part of it was on account of goods Mrs. Gargett did not own. The record, in its statement of evidence, however, is very meager, and although it is stated that all the evidence bearing on the issue is given, yet it is apparent, we think, that it is given in condensed form, and we do not think we should be justified in setting aside the verdict on an assumption that the judge misstated the evidence to the jury, when it does not appear that his attention was called to his error at the time. This is peculiarly an error that should be promptly mentioned so that it may be corrected before it has done mischief, and if this is not done, the record should put the misrecital beyond question before we should be asked to reverse a judgment upon it. In our opinion we should not be justified in doing so upon this record.

We have not noticed specifically the requests for instructions on the part of the defense, which were refused, because we think what has already been said covers the case. The evidence was submitted to the jury fairly, and we think their verdict for the plaintiff, for the full amount of the orders less certain payments made upon them, must be sustained.

The judgment will therefore be affirmed with costs.

The other Justices concurred.