LIZZIE ROSS-LANGFORD, Respondent, v. THE MERCANTILE TOWN MUTUAL INSURANCE COMPANY, Appellant.

| 97 | 79 |
| f99 | 473 |
| 99 | ²721 |

**Kansas City Court of Appeals, December 1, 1902.**

1. **Insurance: POWERS OF SOLICITING AGENT: WAIVING CONTRACT.** An insurance company like an individual may, by writing or parol, modify or enlarge the powers of its agent or by its conduct and course of business estop itself to deny the power of such agent to waive forfeitures, proofs and the like, notwithstanding limitations of power in his appointment. (Cases reviewed.)

2. ————: ————: **SCIENTER: ESTOPPEL.** A soliciting agent being informed that the insured building was a dwelling with one room used as a millinery store, described the building in the application as a dwelling and the company accepted the premium and issued the policy. *Held*, the act of the agent is the act of the company, and it is estopped to question the correctness of the description or to claim a forfeiture of the policy.

3. ————: **TOWN MUTUAL: POWERS OF AGENT: STATUTORY CONSTRUCTION.** The statute providing that no officer, agent, etc., of a town mutual company shall have authority to waive conditions, etc., is made for the benefit of the company and may be waived by it, and while it may insist upon the limitations against the unauthorized acts of its agents, neglect to do so before the issuing of a policy and accepting the premium will prevent its doing so after a loss.

4. ————: ————: ————: ————. The statute is notice of the limitations on agents, but does not prevent the waiving of such limitations.

ON MOTION FOR REHEARING.

5. ————: ————: ————: **WAIVER.** Mensing v. The American Insurance Company, 36 Mo. App. 602, is considered in connection with similar cases and shown to be overruled in effect in Springfield Laundry Co. v. Insurance Co., 151 Mo. 90, and subsequent cases.

Appeal from Worth Circuit Court.—*Hon. Gallatin Craig*, Judge.

AFFIRMED.

*Fyke Bros., Snider & Richardson* for appellant.

(1) The building insured was not a dwelling when insured or when destroyed. Its use in part for a millinery store or millinery shop deprived it of that character and changed the nature of its insurance risk. Gannett v. Albree, 103 Mass.. 372; Mensing v. Ins. Co., 36 Mo. App. 602. (2) Agents of town mutual insurance companies organized under the Missouri laws can not waive conditions in the company's policies or applications for insurance otherwise than in writing. R. S. 1899, sec. 8091. (3) Missouri town mutual insurance companies are exempt from the general insurance laws of this State and sections 7973, 7974 and 7975, Revised Statutes 1899, are not applicable to or binding upon this defendant. R. S. 1899, secs. 8024 and 8091. (4) The defendant had the right to limit the authority of its agent or solicitor and did limit it by printed notice in the application signed by plaintiff and by provision in the policy accepted and held by her, and is not bound by any acts of said agent in excess of that authority. Thompson v. Ins. Co., 68 S. W. 889; Mensing v. Ins. Co., 36 Mo. App. 602; Rickey v. Ins. Co., 79 Mo. App. 485.

*Chas. M. Street* for respondent.

(1) By issuing a policy on a house and accepting the premium for insurance, the insurer is estopped to complain after the loss has occurred, of a misdescription of the house, of which its agent had knowledge. Williams v. Ins. Co., 73 Mo. App. 607. (2) The insurance agent can not be considered an agent of the plaintiff in framing the policy, since that would put the plaintiff in the position of contracting with himself. Joy v. Ins. Co., 35 Mo. App. 165. (3) Even if the evidence shows that the risk is dangerous, being so printed on the application, yet if the agent knows the facts and has authority to write the risk at all, then he has authority to create an estoppel against

the company in the event of a misdescription of the building in the application. Rickey v. Ins. Co., 79 Mo. App. 485. (4) Requirements can be distinctly waived by the insurance agent, although exceeding his known authority. Bush v. Ins. Co., 85 Mo. App. 155.

SMITH, P. J.—This is an action on a fire insurance policy. The case disclosed by the record before us may be stated to be something like this:

The plaintiff was the owner of a small frame dwelling house containing five rooms situate in Denver—a village in this State—and desiring to insure the same against loss by fire applied to the defendant's agent to effect such insurance in defendant—a town mutual company organized under the statutes of this State (art. 9, chap. 119, R. S.) explaining to said agent the situation, character, etc., of the property. This latter, who was authorized to solicit insurance, receive applications, forward the same to said company and collect the premiums, filled out the plaintiff's application, and while he was so doing she told him that the "building was really a residence," but that "one room in it was used for a millinery store," and then inquired of him what he was going to call it and he replied, "a dwelling, of course;" and thereupon he wrote "dwelling" in said application, which was forwarded to the defendant and thereafter the policy was delivered to plaintiff and the premium paid by her. During the life of the policy the building covered by it was destroyed by fire.

The defendant in its answer alleged that in the application for the policy it was stated and warranted that the building on which the insurance was requested was occupied as a dwelling, and that upon such warranty the policy was issued. The answer further alleged that the said building was not in fact a private dwelling, or so occupied, but was in part a business house occupied and used as a millinery store without the consent of the defendant being given

therefor, as provided in the contract of insurance, by reason of which the policy was void, etc. The answer further alleged that in the notice of loss required by the said policy the plaintiff stated that said building so destroyed was occupied as a residence and for no other purpose whatever, well knowing that in part it was occupied as a millinery store at the time of the fire, by reason of which false statement the plaintiff, under the terms of the policy in respect to the giving of notice, had forfeited her claim against defendant, etc.

The plaintiff in her replication alleged that at the time the application was made she informed defendant of all the facts with reference to the said building, and especially with reference to the portion of it that was used for millinery purposes, and that defendant, after being acquainted with the facts, itself wrote the said application and thereby waived any right to claim, and was estopped to claim, said building was not used as a dwelling, etc.

There was a trial in which the plaintiff had judgment and defendant has by appeal brought the case here for review.

The court at the request of the plaintiff instructed the jury to the effect, that if the "building was used for a dwelling at the time it was destroyed by fire and that plaintiff made proofs of loss for the same, then your verdict must be for the plaintiff, notwithstanding you believe from the evidence that said building was not used exclusively for dwelling purposes at the time the application mentioned in evidence was made, but that one room was used for a millinery store, provided you further believe that at the time plaintiff made application for said insurance of defendant's agent, the plaintiff disclosed the fact to said agent that one room of said building was used for a millinery store and that the defendant's agent thereupon wrote in said application that said building was occupied as a dwelling."

The court refused to instruct for defendant: (1) "The defendant is a town mutual fire insurance company, and it is not within the powers of its agent who

took the application for the policy on which this suit is brought to waive any of the conditions of the application or policy unless such waiver was in writing, and even if you should find that the agent who took said application and issued said policy knew that said building was occupied as a millinery store or shop, still that would not constitute a waiver of the warranty in the application and policy that the building was occupied as a dwelling.'' (2) ''That under the terms of the policy said building was insured as a private dwelling. Now if you find from the evidence that at the time of the fire, the same was not used as a private dwelling only, but was used in part as a millinery store, or millinery shop, plaintiff is not entitled to recover.'' (3) ''That if you find from the evidence that plaintiff made an application in writing for the policy sued on and that it is stated in said application that the building was occupied as a dwelling, then said statement constituted a warranty that said building should be so occupied as a dwelling only during the continuance of said policy, and if you find from the evidence that a portion of said building was at the time of the fire or at any time subsequent to the issuing of the policy had been occupied and used as a millinery store or shop, plaintiff is not entitled to recover.''

These instructions clearly outline the respective theories of the parties and that upon which the case went to the jury. These theories are so diametrically opposed that if one be right it inevitably follows that the other is wrong. One of the principal questions arising in the case is whether or not the statement in the application that the building on which insurance was issued was a frame dwelling, without the mention of the fact that one room therein was occupied as a millinery shop, was a misdescription amounting to a misrepresentation of a material fact concerning the subject of the insurance, and if so should it have the effect to invalidate the policy? We can not see that any other effect can be given it under the express conditions of the policy pleaded unless the defendant has in some

way waived its right or is estopped to insist on said misrepresentation as ground of forfeiture.

It is conceded that the defendant's soliciting agent, after he was apprised of the fact that one room of the plaintiff's building was used for a millinery shop, was accorded and exercised the option of selecting the term which should be written in the application as descriptive of the plaintiff's dwelling. He it was who, with all the facts and circumstances touching the occupancy and use made of the plaintiff's building, elected to term it in such application a "frame dwelling." If he was the agent of the defendant and his act was that of the defendant, then the term used in the application in describing the building was that of the defendant's own choosing. The application thus written was accepted by the defendant, the policy written and delivered, and the premium thereon was paid. It is claimed that this constituted a waiver or was in legal effect the same as striking the condition from the policy.

The defendant, on the other hand, claims that since the application in plain and unambiguous terms gave notice to the plaintiff that it would be bound by no statement made to an agent not contained in the application, or, which is the same thing, that no statement made to an agent not in writing would be effective to bind defendant, that, therefore, the statement made by the plaintiff to defendant's agent as to the occupancy of a part of her building was as if it had never been made.

Under the law, as it has been repeatedly declared by the appellate courts of this State, there can be no doubt that a principal has the power to limit the authority of its agent and can not be held for acts of the latter in excess of his powers. In Thompson v. Ins. Co., 68 S. W. 889, it was said that the cases in this State "give full effect to the contractual power of the principal to limit the authority of his agent in the original appointment or at any other time, but they also give like effect to all subsequent powers conferred by the principal upon his agent, either expressly or by implication, or by estoppel, notwithstanding such

powers are in conflict with, in derogation of, or in enlargement of the powers originally conferred. And this rests upon the doctrine that in each instance the principal binds himself, not that the agent binds the principal beyond his powers to bind him. The act of the principal limiting the power of the agent is not irrevocable at the will of the principal. As the principal has the freedom to contract to impose the limitations upon the power and authority of the agent in the first place, so, also, the principal has the freedom to contract to remove, abolish, alter, diminish, or increase the limitations originally imposed upon the power of the agent, and this the principal may do in any manner that in law will be binding upon him; but in every case it is the act of the principal that the law simply enforces, and not the unauthorized act of an agent, done in excess of the authority conferred.'' And in the same case it was stated that the policy then under consideration contained a provision that no agent except the secretary of the company should have the authority to waive, alter or modify the terms of the policy, nor to waive any forfeiture of the policy, nor to revive any forfeited policy, any contract by parol, or otherwise, or understanding with the agent to the contrary notwithstanding. This statement is followed with the observation that the defendant concedes that the rule has long obtained in this State that notwithstanding such express limitations of the power in the agent by the terms of the policy, the insurance company, just like any individual who has so stipulated in the power appointing an agent, may afterwards, by another writing or by parol, modify or enlarge the power of the agent, *or by its conduct and course of business with the assured be estopped to deny that the agent had not power to waive forfeitures, proofs of loss and the like, notwithstanding the limitations of power contained in his appointment,* citing Nickell v. Ins. Co., 144 Mo. 420; Laundry Co. v. Ins. Co., 151 Mo. 90.

And so it has been held that agents in soliciting insurance when they undertake to prepare the applica-

tion of the insured or make any representations to the
insured as to the character or effect of the statements
of the application, will be regarded as doing so as the
agents of the insurance company and not of the in-
sured. Ins. Co. v. Wilkerson, 13 Wall. 222. In Combs
v. Ins. Co., 43 Mo. 148, it was said that the authority
of the agent of an insurance company to take applica-
tions for insurance carried with it the legal implication
of authority to fill up the application and do all things
needful in perfecting it; and that the acts of such agent
were the acts of the company, and that from this it fol-
lowed, necessarily, that the doctrine of estoppel *in pais*
applied and the company could not after loss disprove
the statements that may well be said were made by it.
It accepted the application, knowing the facts, and as-
sumed the risk with this knowledge. Thomas v. Ins.
Co., 20 Mo. App. 151. And in other cases in this State
it has been in substance said that it matters not that
the policy may stipulate that consent or waiver could
only be effective by writing indorsed on the policy.
In such circumstance failure of literal compliance with
the stipulation would not be allowed to work a forfeit-
ure—the company being estopped to make such claim.
Hamilton v. Ins. Co., 94 Mo. 368; Anthony v. Ins. Co.,
48 Mo. App. 65. And neither is there any impediment
to waiving a stipulation as to waiver. Barnard v. Ins.
Co., 38 Mo. App. 113; Anthony v. Ins. Co., supra. Wil-
liams v. Ins. Co., 73 Mo. App. 607, was an action on a
fire insurance policy where a forfeiture was claimed
on the double ground that there was a misdescription
in the application as to the kind of building and as to
its value. The misdescription was conceded and that
the agent who took the application wrote the descrip-
tion of the building from his knowledge of it. "In
such circumstances," it was said by the judge who
wrote the opinion, "the knowledge of the agent should
be imputed to the company. With this knowledge,
after having issued the policy and accepted the pre-
mium for insurance, it should not be heard to com-
plain of the misdescription after loss. . . . Nor

does the fact that the application was read over to plaintiff alter the case. The fact still remains that the insurance company issued the policy and accepted the premium with knowledge that the house was misdescribed,'' citing cases. And in the recent case of Bush v. Ins. Co., 85 Mo. App. 155, it was said that ''it is now held that though the authority of the agent is limited and the knowledge of the limitation is brought home to the assured, yet the acts of the agent are considered those of the company itself, and they may bind the company though exceeding the limitation,'' citing James v. Ins. Co., 148 Mo. 1; Laundry Co. v. Ins. Co., 151 Mo. 90.

In view of the rulings in the cases to which we have referred, it is clear that the acts and declarations of the defendant's soliciting agent while writing the application were those of the defendant, and as its agents was apprised of the fact that the building was partly occupied as a millinery shop and with this knowledge it chose to designate and describe the building and its use as a ''dwelling,'' to accept the application so written by its agent, to issue the policy and receive the premium thereon, it ought to be estopped to question the correctness of the description of the subject of the insurance, or to claim a forfeiture under the provisions of the policy.

But it is contended that the defendant could not waive the conditions either of the application or the policy because of the limitation contained in section 8091, Revised Statutes, which is that *no officer, agent or other employee* shall have authority to waive any conditions of the application or policy unless such waiver be reduced to writing upon the application and policy, or attached thereto. This section is found in article 2, chapter 119, Revised Statutes, supra, and is therefore a part of the defendant's charter; and the question now is, what effect if any shall be given to it in its application to the present case. It is a new section and so far as we know has not been noticed in any reported adjudication.

Manifestly, it was introduced into the defendant's charter for its benefit and may be waived by it, for it is very well settled that a party may waive the provision of a contract or .statute made for his benefit. White v. Ins. Co., 4 Dillon l. c. 183; Shutte v. Thompson, 15 Wall. l. c. 159; In re Cooper & Co., 93 N. Y. l. c. 512; Lee v. Tillotson, 24. Wend. 337; Cooley's Const. Lim., 181. If it chooses to do so a mutual insurance company may abandon its right to insist upon the protection afforded it by the statutory limitation; as, for illustration, a solicitor may write an application which he is apprised misdescribes the character of a building or its distance from another, or misstates its value or the incumbrances thereon, and with this knowledge of the solicitor, which is the knowledge of the company, the application is received, the policy issued and the premium paid, it would thereby waive the right to insist upon the statutory limitation and be estopped to claim a forfeiture. It would have the right to insist upon the limitation in such case for its protection against the unauthorized acts of its soliciting agent, but if it neglected to do so before issuing the policy and accepting the premium, it could not do so after a loss occurs. This would operate as a fraud on the assured.

This statute is notice to all applicants for insurance in town mutual companies of the limitations on the power of their soliciting officers, agents and employees. Since it became operative it has been unnecessary for these companies to give notice of such limitations in any other way. But it does not disable or incapacitate such companies to waive any of the conditions of an application or policy or to modify or abrogate the same unless in writing.

It seems clear to us that this statute in no way helps the defendant in its contention. It had knowledge of the misdescription and with that knowledge it accepted the application, issued the policy and took the premium, and it should not be permitted after loss to, for the first time, claim that its soliciting agent in writ-

ing the application exceeded the limitations placed by the statute on his authority; or, which is the same thing, to insist that the description of the building which the agent adopted himself as proper and sufficient, is such a misdescription as avoids the policy. It would be a fraud and upon principle it ought to be estopped to make such claim.

We think the court did not err either in the giving or refusing of instructions. The judgment must be affirmed. All concur.

OPINION ON MOTION FOR REHEARING.

SMITH, P. J.—It is insisted that while this case is like that of Mensing v. The American Ins. Co., 36 Mo. App. 602, it has been decided contrary to the way that case was decided. Are the two cases alike?

In this case, the plaintiff in her written application for the policy warranted that the building which she sought to have insured was occupied as a dwelling, and it was upon this warranty the policy issued. The policy provided that if the insured misrepresented in writing any material fact concerning the subject of the insurance, it would be void. There was also a further provision to the effect that this policy is made and accepted subject to the foregoing stipulations and conditions: ". . . and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of the policy may be the subject of agreement indorsed hereon or added hereto, and to such provisions and conditions, no officer, agent or representative shall have such power or be deemed or held to have waived such provisions and conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission, affecting the insurance under the policy, exist or be claimed by the insured, unless so written or attached."

The policy in the Mensing case provided that the "insurance in this company is confined to farmhouses,

barns and outbuildings, private dwellings and private barns in towns . . . and no authority is given to any agent to take any application in any other class of property, and not upon any property exposed within one hundred feet of a store, hotel, public boarding house, mill, manufacturing establishment, or other extra or special hazard.'' The application stated the property to be a dwelling house, when it was, in fact, a boarding house with a saloon in the front room. In this case, as has been set out, the property was stated in the application to be a dwelling house, when it was a dwelling, in one room of which was a millinery store, and this fact was known to the agent at the time he wrote the application.

In the Mensing case there was contained in the policy a limitation on the authority of the agent of which the insured had notice that no agent had authority to take any application for insurance on any other class of property than that specified in the limiting clause. The agent of the insurer knew at the time he accepted the application that the property was not a dwelling house but a boarding house and saloon. On this state of facts it was held by us in that case that the limitation contained in the policy was notice to theʼ insured that the agent had no authority to insure a boarding house and saloon, and that the defendant had the right, as any other principal, to limit the authority of its agents; and to allow the plaintiff to recover would be to hold defendant liable for a risk it did not take.

In the present case, the plaintiff had notice that any statement respecting the subject of the insurance made by her to the agent, or by him to her, would not bind the insurer unless in writing. According to the rule declared in the Mensing case, it would seem that the knowledge of the agent that the property was misdescribed in the application was of no consequence and would not validate the risk. If the insurer had the right to limit the power of its agent in the one case, it is difficult to see why it did not in the other. In principle the two cases are quite alike. If the Mensing

case had not been trenched upon or overthrown by later cases, which we are bound to follow, it would appear this case was incorrectly decided.

In the later case of Shoup v. Ins. Co., 51 Mo. App. 286, where the policy expressly provided that the insurer should "not be bound by act or statement made to any agent unless inserted in the contract." In the application for the insurance it was stated that the applicant was the sole owner in fee of the land on which the subject of the proposed risk stood, while in truth the applicant only had a homestead interest therein. It was shown that the applicant informed the agent who solicited the insurance and wrote the application of the true state of the title. In the opinion in that case, after quoting what was ruled in the Mensing case, it was held that the limitation on the agent's authority was directly in the way of the plaintiff's recovery. That the plaintiff could not be permitted to show that the agent was informed of the true condition of the title.

In Jenkins v. Ins. Co., 58 Mo. App. 210, the limitation contained in the policy was that, "no act or deed or promise made by any agent, not indorsed hereon, shall be construed into a waiver of the printed terms or conditions, and any changes or waivers can only be made in writing by either the secretary or the district agents at Montgomery City, Missouri." The policy also contained a stipulation that, "if the assured without written permission hereon shall now have, or hereafter make or procure any other contract of insurance, whether valid or not, without consent indorsed hereon, the policy shall be void." It appears that after the issue of the policy the insured without the written consent of the insurer or its agents, procured other insurance on the same property. The insured was not permitted at the trial to prove that the agent of the insurer was apprised of the other insurance— and this refusal on the appeal was held proper. It was further held that the limitation was effective and that a soliciting agent in the face of such a limitation could not waive the conditions of the policy.

But in Springfield Laundry Co. v. Ins. Co., 151 Mo. 90, both the Shoup and Jenkins cases are expressly overthrown and declared "not longer to be followed," and thereby declaring, as said by us in Wolf v. Ins. Co., 86 Mo. App. l. c. 583, that the soliciting agent of an insurance company with limitations imposed upon his authority similar to those in that case, known to the insured, may waive the conditions of the policy. The limitation in the Wolf case just referred to (75 Mo. App. 336; 86 Mo. App. 580) was similar to that in the Jenkins case, but being obliged to follow the ruling in Laundry Co. v. Ins. Co., supra, we changed front, as will be seen by reference to the two opinions delivered on the second appeal—86 Mo. App. ante.

The Mensing case is in no way distinguishable from the Shoup and Jenkins, or the first of the Wolf cases, and as the two former of these have been overthrown by the Supreme Court, and the latter by ourselves, we can not see why it—the Mensing case—may not, too, like its parallels referred to, be considered as overruled and "no longer to be followed."

The question has been pertinently asked whether or not under the law of principal and agent, as it has been declared in this State, in so far as applicable to insurance companies, an insurer can in any case impose a limitation upon the authority of his agent that will be efficacious, even though such limitation be in writing and brought to the notice of the insured? The only answer we can make is to cite Springfield Laundry Co. v. Ins. Co., ante, and James v. Ins. Co., 148 Mo. 1.

It is needless to say that if our ruling in this case is opposed to that in the Mensing case, that it is in accord with the last of the Supreme Court.

The motion will accordingly be denied.