## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

MARCH TERM, 1906.

*(Continued from Volume 119.)*

RUDD, Respondent, v. AMERICAN GUARANTEE FUND MUTUAL FIRE INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, June 5, 1906.

1. **INSURANCE: Authority of Agents: Waiver of Stipulations.** Local agents of insurance companies, having authority to make contracts of insurance, countersign, issue and deliver policies, and receive premiums, may waive stipulations in policies which purport to be essential to their validity, although such policies contain a stipulation that no agent has power to waive its provisions unless the waiver be expressed in writing signed by the general agent and attached thereto.

2. ———: **Waiver of Stipulation: Parol Evidence.** Oral evidence is admissible to prove a waiver by the agent, at the time of writing a policy of insurance, of the provisions of the iron-safe clause contained therein, and the admission of such evidence is not in violation of the rule that parol evidence cannot be received to contradict or vary the terms of a written contract.

3. ———: **Iron-Safe Clause: Waiver.** Where the agent of an insurance company, on writing a policy, was told by the insured that it was impracticable to comply with the iron-safe clause in the policy and the agent agreed that the company would waive the stipulation, delivered the policy and accepted the premium, the stipulation was thereby waived.

120 App.—1

4. ———: Waiver of Forfeiture: Adjustment. The adjustment of a loss waives a forfeiture for a known previous violation of the policy.

5. ———: ———: ———: Knowledge of Fact Waived. But an essential element of a waiver is knowledge of the fact to be waived, and where a waiver of a requirement to keep books and inventories was claimed by the insured, the adjustment did not waive that condition in the absence of knowledge on the part of the adjuster that the books had been destroyed.

6. ———: ———: ———: Non-Waiver Agreement. An agreement made by the insured that any action taken by the company in investigating and ascertaining the cause of the fire and the amount of the loss, should not waive any of the conditions of the policy, did not protect the company against the consequences of an adjustment made after the adjuster had satisfied himself that the loss was an honest one.

7. ———: Waiver: Pleading. Under the rule that in an action on an insurance policy, a waiver of conditions may be proved under an averment of performance, a plaintiff in such action may prove that the iron-safe clause in the policy was waived by the agent at the time of writing the policy, or that forfeiture for non-compliance with the iron safe clause was waived by an adjustment.

8. ———: Practice: Instruction: Ignoring Issue. An instruction in such cause authorizing a verdict for plaintiff and omitting any mention of the defense of failure to comply with the iron-safe clause set up in the answer, was error.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*Barclay, Shields & Fauntleroy* for appellant.

(1) The alleged conversation between plaintiff and Stephens, the soliciting agent of defendant, in reference to the keeping of the books in an iron safe or other secure place cannot be construed a waiver of the conditions of the application and policy. All agreements of this character were merged in the written application and policy. And evidence thereof should have been excluded and the instructions thereon were errone-

ous. Bernard v. Life Association, 32 N. Y. Supp. 223; Gillum v. Fire Assn., 106 Mo. App. 673, 80 S. W. 283; Ins. Co. v. Neiberger, 74 Mo. 167; Helm v. Railroad, 98 Mo. App. 419, 72 S. W. 148; Crigler v. Ins. Co., 49 Mo. App. 11; Gibson v. Ins. Co., 82 Mo. App. 515; Ins. Co. v. Morris, 28 Ins. Law Jour. 402; New Orleans v. Griffin (Texas), 18 S. W. 505; Lama v. Ins. Co., 51 Mo. App. 447; Mateer v. Railroad, 105 Mo. 320, 16 S. W. 839. (2) The conversation between plaintiff and West after the fire, in which it is claimed that West agreed to pay the loss, and that there was an accord and satisfaction, being set up as a cause of action in the reply only, cannot prevail, and all testimony thereof should have been excluded. Stepp v. Livingston, 72 Mo. App. 175; Wonderly v. Christian, 91 Mo. App. 159; Norrison Mfg. Co. v. Roach, 104 Mo. App. 632; Hill v. Mining Co., 119 Mo. 30, 24 S. W. 223; Mohney v. Reed, 40 Mo. App. 97; Lanitz v. King, 93 Mo. 513, 6 S. W. 263. (3) The alleged agreement between plaintiff and West was neither an accord and satisfaction, nor waiver of the conditions of the policy. If such agreement was made West had no authority to make it. It was made under a non-waiver agreement which was valid, and prevented anything that West might have said or done being construed as a waiver of the conditions of the policy. The evidence thereof should have been rejected, and the instructions thereon were erroneous. Keet-Rountree Co. v. Mercantile Town Mutual Ins. Co., 100 Mo. App. 504, 74 S. W. 469; Sun Mutual Ins. Co. v. Dudley, 45 S. W. 539-542; Catterlin v. Lusk, 98 Mo. App. 182, 71 S. W. 1109; Crim v. Crim, 162 Mo. 544, 63 S. W. 489.

*William P. Elmer* for respondent.

(1) The soliciting agent of the company, J. M. Stephens, had the right to fill out the application and if the plaintiff communicated the true facts to him in

regard to the iron safe and books, and said agent put the same down wrong, such acts are the acts of the company, and they are estopped from denying the same. Plaintiff never saw the application and did not know of the agent's limited authority, and the agent of the company had Doss Gibson to sign the same for the plaintiff, making this point stronger against the company than in the cases cited below. Bushnell v. Ins. Co., 85 S. W. 103; 16 Am. and Eng. Ency. Law (2 Ed.), 942; Montgomery v. Ins. Co., 80 Mo. App. 500; Wolf v. Ins. Co., 86 Mo. App. 582; Laundry Co. v. Ins. Co., 151 Mo. 90, 52 S. W. 238. (2) The agreement between the plaintiff and Stephens, soliciting agent for the defendant, had the effect of eliminating the iron-safe and book clause from the policy contract, and the evidence was sufficient upon that point to authorize a submission to the jury and the jury found that same had been eliminated from the contract, and if plaintiff accepted the policy under this contract, and with this understanding, the defendant thereby waived all right to claim any benefit of the conditions pleaded in their answer. Hannah & Co. v. Orient Ins. Co., 82 S. W. 1115. (3) An adjuster is one who takes proofs of the loss, ascertains the loss and agrees upon a settlement and has the authority to waive all matter of form or detail in connection therewith, and can bind the company by agreeing to a settlement of a loss and can waive proofs of the loss, and the evidence in this case was sufficient to warrant the submission to the jury, and for them to find that W. C. West, special agent of the defendant, was an adjuster within the meaning of that term, and adjusted this loss. McCullum v. Ins. Co., 67 Mo. App. 69; Ramsey v. Underwriters Assn., 71 Mo. App. 383. (a) The agreement between the plaintiff and special agent, West, upon a settlement of the policy, was a waiver of any forfeiture set up in defendant's answer. 13 Am. and Eng. Ency. Law (2 Ed.), p. 383 (e); Boeem v. Ins. Co., 60 Mo.

App. 277; McCullum v. Ins. Co., 61 Mo. App. 352. (b) The act·of special agent West in making settlement and adjusting the loss with the plaintiff, was made in the apparent scope of his authority and bound the defendant, and any secret limitation of his authority by the defendant in no way bound the plaintiff; he assumed the authority to make the agreement, and defendant is bound by it. Vancleve v. Union Casualty Ins. Co., 82 Mo. App. 684; 13 Am. and Eng. Ency. Law (2 Ed.), p. 326 (b). (4) The "non-waiver agreement" not being required by the policy and being in waiver of vested rights, would have to have a valid consideration to support it, and not having the same, could not be set up in this case against the adjustment. 7 Am. and Eng. Ency. Law (2 Ed.), p. 90. Plaintiff's reply does not set up a new cause of action by pleading the waiver of forfeiture and adjustment. Gearhart Realty Co. v. Ins. Co., 86 Mo. App. 598; Stepp v. Livingstone, 72 Mo. App. 177. Defendant's answer did not set up the failure to make proof of the loss as any defense to the action on the policy, and such matters must be specially pleaded and cannot be raised under general issue. Pattison, Missouri Code Pleading, secs. 299, 551, 552, 727; Meyer v. Ins. Co., 73 Mo. App. 166; Bliss, Code Pleading (2 Ed.), sec. 356a.

GOODE, J.—This is an action on a fire insurance policy issued by the defendant company October 16, 1903, to run for one year and covering a stock of drugs and merchandise contained in a store in the town of Anutt, in Dent county, Missouri. The stock was entirely destroyed by fire July 25, 1904, the store building having been ignited by some unknown cause. It was agreed at the trial that the loss to plaintiff on the property covered by the policy was greater than $500, the maximum indemnity to be paid in case of loss by fire. The action was instituted to recover that sum. A few days after the fire the company sent plaintiff blank proofs of loss which he filled out, signed and returned to the company. No

point is made that the proof furnished fell short of complying with the requirements of the policy.

In defense a violation of the "Inventory and Iron-Safe Clause" of the policy was pleaded. This stipulation required the assured to take a complete inventory of stock at least once in each calendar year, and unless such inventory had been taken within twelve months prior to the date of the policy, to take one in detail within thirty days. It also required him to keep a set of books clearly setting forth a complete record of the business transacted for cash and on credit, including purchases, sales and shipments, from the date of the inventory and during the continuance of the policy, and to keep such books and inventory securely locked in a fireproof safe at night and at all times when the building containing the insured stock was not open for business; or failing this, to keep such books and inventory in some place not exposed to a fire which might destroy the building. It was further provided that if the assured failed to produce such books and inventory for the inspection of the company on demand, the policy should become void and there could be no recovery on it. The defendant alleged that plaintiff failed to make an inventory in compliance with the clauses we have digested; that he did not keep a set of books showing purchases and shipments during the term the insurance contract was in force, or keep such books and inventory locked in an iron safe or other place not exposed to fire, and did not produce such books on demand of defendant, though the fire occurred when the building where plaintiff kept his store was not open for business; that is, did not occur during business hours; that whatever inventories or books plaintiff kept were destroyed by the fire and plaintiff was unable to produce any books or inventories from failure to preserve the same in a fireproof iron safe or other place not exposed to fire. Wherefore it is alleged the policy became null and void and

defendant tendered into court and offered to return to plaintiff, the premium paid for the insurance.

A reply was filed denying each allegation of the answer and averring in avoidance of defendant's plea in bar, that John M. Stephens is defendant's agent at Salem; that plaintiff made application to said Stephens for insurance on the property covered by the policy and at the time of applying for it informed Stephens that the drugstore and said business would be conducted in connection with plaintiff's practice as a physician; that he did not employ a clerk nor keep the store open regularly for business; that Stephens was also informed at the time of such application that plaintiff did not have an iron safe and this fact was well known to said agent from a personal inspection of the risk; that Stephens told plaintiff it was not necessary to have an iron safe; that plaintiff's profession called him away from the store at all times of the day and night and said calls for his professional services were so urgent that plaintiff was compelled to leave without having time to put his books in a place of safety; that plaintiff did keep a set of books showing the sales made by him and invoices of all goods he purchased, and said agent knew the kind and character of books kept and where they were expected to be kept, and assented to the keeping of them in such manner and waived the keeping of them in an iron safe; that with this understanding plaintiff paid the agent the premium and it was accepted by the company and the policy issued; by which act defendant, through its agent, waived all right to claim any benefit from said condition set forth in the answer; that plaintiff can produce and has offered to produce to defendant's adjuster, and now offers to produce the bills of invoice of all purchases made by him and make full proofs of loss, but the same were not demanded by said adjuster; that defendant's adjuster agreed to pay the loss to plaintiff by reason of said fire, at the expiration of the time fixed for

Rudd v. Fire Ins. Co.

payment of losses by the policy, said adjuster having agreed to pay plaintiff's loss in full after having made an investigation concerning the origin of the fire; that by agreeing to pay said loss in full there became an accord and satisfaction of damage and loss on part of plaintiff, and defendant waived any forfeiture of the policy it might have asserted and is now estopped from asserting a forfeiture.

The policy contained the clauses alleged in the answer and it was proved the fire occurred at night when the store was not open for business; that plaintiff told Stephens, the agent to whom he made application for insurance, that plaintiff kept no clerk and the store would be closed at irregular hours; that there was no iron safe in it; that whenever plaintiff knew he was to be away for any length of time he would leave his books at the store of Mr. Porter in the same town. When negotiating for the insurance plaintiff objected to the iron-safe clause in the policy, explaining to the agent that it would be impossible, on account of his professional practice, to secure his books from fire in the manner required by that clause. Both he and Stephens swore the latter consented to accept his application for the policy on the understanding that keeping the books in an iron safe or some place where they would be safe from fire which might consume plaintiff's store building, would not be obligatory on plaintiff. A written application for the insurance was signed in plaintiff's name by his brother-in-law, who, according to plaintiff's testimony, had authority to act for him. This application was dated October 13, 1903, and contained certain statements and warranties; among others that plaintiff would comply with the inventory and iron-safe requirement. One clause of the policy was the following:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be

indorsed hereon, or added hereto, and no officer, agent or other representative of this company, except the president or secretary, shall have power to waive any provision, or any condition of this policy, except such as by the terms of this policy, may be the subject of agreement indorsed hereon, or added hereto, and as to such provisions and conditions, no officer, agent or representative, shall have such power, or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto. Nor, shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached and signed by the general agents."

Some six weeks after the fire a special agent or adjuster visited Anutt for the purpose of investigating the loss. The testimony for plaintiff is that after he had looked into the matter this adjuster said he was satisfied the loss was an honest one and greater than the amount of indemnity provided; that plaintiff's claim would not be contested by the company, but he would be paid in a few days; that the money would be paid to the Salem Bank and plaintiff must deposit his policy there and a receipt for the $500 to be paid him. The adjuster denied making such a statement and swore he had no power to adjust losses except subject to the company's approval. At the time of his visit he procured plaintiff's signature to the following document:

"It is hereby mutually agreed and stipulated by and between W. E. Rudd, party of the first part and the Mercantile Town Mutual Insurance Company, and American Guaranty Fund Mutual Fire Insurance Company, party of the second part, that any action taken by the party of the second part in investigating the cause of the fire, or investigating and ascertaining the amount of loss and damage to the property of the party of the first part caused by fire alleged to have occurred on the 25th day

of July, 1904, shall not waive or invalidate any of the conditions of the policy of the party of the second part, held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement.

"The intent of this agreement is to preserve the rights of all the parties hereto, and provide for an investigation of the fire and the determination of the amount of the loss or damage, in order that the party of the first part may not be delayed unnecessarily in his business, and in order that the amount of his claim may be ascertained and determined without regard to the liability of the party of the seccond part."

Defendant objected to all the testimony regarding conversations between plaintiff and Stephens, the local agent of defendant at Salem, tending to show an agreement by Stephens made anterior to the issuance of the policy, that the inventory and iron-safe clause should not be obligatory; also to testimony of statements by the adjuster that the loss would be settled, and to instructions recognizing such statements and acts of Stephens as a waiver of compliance by plaintiff with the inventory and iron-safe clause, and a waiver by the adjuster of any forfeiture for non-compliance even if Stephens had not waived the clause in making the contract. These objections were overruled and exceptions saved.

The verdict and judgment were for plaintiff, and defendant appealed.

1. There was evidence for the jury on the issue of waiver by Stephens, defendant's local agent, of the inventory and iron-safe clause. Indeed the evidence was conclusive in favor of a waiver, if plaintiff and Stephens are to be believed. The former acted in good faith about the requirement, notifying Stephens when he applied for insurance that it would be impossible for him to conform to it because his practice as a physician called him away from the store, and as he had no clerk he would be forced

to close the building frequently during business hours, instead of keeping it open continually. The clause in question required the books of account and the inventory to be kept in an iron safe or other place secure from fire whenever the building, in which the merchandise was contained, was closed; a requirement incompatible with the professional engagements of plaintiff. He and Stephens discussed the matter and the latter informed him in effect, that the company would waive the stipulation and he need not comply with it. This case must be determined according to the latest decisions of the Supreme Court, which are in conflict with some decisions of the two appellate courts and, perhaps, with earlier decisions of the Supreme Court. Local agents of insurance companies, vested with authority to make contracts to insure property, countersign, issue and deliver policies and receive premiums, stand in the place of the companies in dealing with applicants for policies and may waive stipulations which purport to be essential to the validity of the contract. [Parsons v. Ins. Co., 132 Mo. 583, 592, 31 S. W. 117, 34 S. W. 476; Risler v. Id., 150 Mo. 366, 374, 51 S. W. 755; Carr v. Id., 100 Mo. App. 602, 75 S. W. 180; Springfield, etc., Co. v. Id., 151 Mo. 90, 98, 52 S. W. 238; Weed v. Id., 116 N. Y. 117; 1 Joyce, Insurance, sec. 439.] According to those authorities, and we are bound by them, this rule prevails over a restriction in the policy prescribing a particular mode in which its terms may be waived or designating particular persons who alone have power to waive a term. Probably the rule has grown out of the repugnance of equity to forfeitures and its unwillingness to permit the forfeiture of an insurance policy to be accomplished by the fraud of the company. No point is made that the authority of Mr. Stephens was too narrow to make this rule applicable to the facts of the present case. The position of the company is that as the oral assent by Stephens to plaintiff's keeping his books and inventory

in the storeroom and exposed to destruction by a fire which would destroy the merchandise, was given during the negotiation for insurance and anterior to the delivery of the policy, it was superseded by this document, which, when delivered, became the sole evidence of the contract. In other words, the rule is invoked that oral evidence is not admissible to contradict or vary the terms of a written instrument or engraft a stipulation on it. The position that the court erred in receiving testimony regarding the oral agreement and in treating it as evidence of a waiver by the company of the iron-safe clause, is untenable under the decisions in this State, and in many other jurisdictions. Stephens, as the full representative of the company, had power to waive the stipulation in question and did waive it by accepting the premium and permitting the policy to stand without objection when he knew the stipulation was not being, and would not be, observed. [Riley v. Ins. Co., 92 S. W. 1147.] The law imputes the power to him. In such instances the waiver contains the elements of estoppel; and this is emphatically true in the present case, wherein the defense that plaintiff did not comply with the iron-safe clause is unconscionable, in view of the fact that the policy was issued to him and his premium accepted after he had declared that it was impossible for him to observe the clause and he would take the insurance only if compliance was excused. A waiver or estoppel has been allowed against an insurance company, because of the conduct of its local agent, when the facts before the court were exactly like those in the case at bar and when the facts, though different, were so analogous as to render the point calling for decision, the same in principle as the one involved here. Identical cases wherein the issue was whether the acts of the local agents at the time the applications for insurance were presented, waived the necessity for compliance with the iron-safe clause, are: Parsons v. Ins. Co.; Risler v. Id., supra; Bush v. Id.,

85 Mo. App. 155; Hanna v. Id., 109 Mo. App. 152, 82 S. W. 1115. Analogous cases are Springfield, etc., Co. v. Ins. Co., supra; Thompson v. Id., 169 Mo. 12, 68 S. W. 889; Ross-Langford v. Id., 97 Mo. App. 79, 71 S. W. 720; Ormsby v. Id., 98 Mo. App. 37, 72 S. W. 139; Mackett v. Phila. Underwriters, 79 Mo. App. 16. The last cited cases, and many others which might be collected, hold, in effect, that, if the agent who writes the policy is aware when he does so of some condition which one of its terms makes essential, and notifies the insured that such condition is immaterial or will not be required, compliance with the term is waived. We hold that the court committed no eror in refusing to instruct for a verdict for the company because plaintiff failed to preserve his books and inventory safe from the fire, and in instructing that if he communicated to Stephens the facts regarding his inability to comply with such clause and Stephens consented to waive compliance, the failure to comply was not a defense; nor in refusing counter-instructions requested by defendant. If this conclusion is opposed to the judgments in Crigler v. Ins. Co., 49 Mo. App. 11, and Gillum v. Id., 106 Mo. App. 673, 80 S. W. 283, the first of those decisions may be treated as overruled by, and the latter as opposed to, the later decisions of our Supreme Court.

2. The court instructed that if the special agent who visited the locality in the middle of September after the loss, was defendant's adjuster, and as such and on behalf of defendant, met plaintiff and they agreed on the amount of the loss, and the agent in behalf of defendant, agreed to pay plaintiff the full amount of the policy, the jury should find for plaintiff, if they further found the agent had authority from the company to adjust and settle the loss. In another instruction the jury were told what authority was necessary to constitute an agent of an insurance company an adjuster. The definition given is not challenged. The same instruction advised the jury

that if defendant's special agent had the authority necessary to constitute him an adjuster, and authority to agree on a settlement of the loss, either as adjuster or special agent, and did agree with plaintiff on a settlement, then the company was estopped to assert a forfeiture of the policy on the grounds set up in the answer; that is, for non-observance of the iron-safe clause. The facts in proof warranted a finding that the special agent who visited plaintiff, came as an adjuster and was empowered to settle with plaintiff. When the agent visited plaintiff he asked about the books and inventory and was told they had been consumed. There was abundant testimony that after he knew this fact, the agent said he was convinced the loss was honest and greater than the indemnity named in the policy, and that plaintiff would be paid without contest; that the agent told plaintiff, to deposit his policy and a receipt with the Salem bank, saying the check to pay the loss would be forwarded to the bank. Whether the iron-safe clause is intended simply to aid in ascertaining the amount of the damage done by a fire, or to diminish the risk of loss by preventing, in some measure, the collection of exaggerated indemnities, it is obvious that when a company is satisfied both that a fire was of honest origin and that the damage was greater than the amount of the indemnity, all purposes which can be served by the preservation of the account books and an inventory, are achieved without those data. According to the testimony for plaintiff, there was a complete adjustment of the loss in question and everything was done looking toward settling it, except making the payment. Plaintiff testified that he and the agent agreed on a settlement. This testimony was corroborated by Stephens and other witnesses. The adjustment of a loss waives a forfeiture for a known previous violation of the policy. [McCullom v. Ins. Co., 61 Mo. 352; Ramsey v. Assn., 71 Mo. 383; 13 Am. and Eng. Ency. Law (2 Ed.), p. 326; 4 Joyce, Insurance, 3385; Levy v.

Ins. Co., 10 W. Va. 560, 27 Am. Rep. 598; Egan v. Id., 10 W. Va. 582; Ill., etc., Co. v. Archdeacon, 82 Ill. 236; Farmers, etc., Co. v. Gargett, 42 Mich. 289; Smith v. Ins. Co., 62 N. Y. 85; Wagoner v. Id., 142 Pa. St. 338.] The adjuster testified that if he said he would pay the loss, or agreed on a settlement, it was before he knew the books had been consumed. An essential element of a waiver is, of course, knowledge of the fact to be waived. Therefore, this testimony of the agent presented an issue of fact and the court erred in instructing that the agent's agreement to settle estopped the company from asserting a forfeiture for non-compliance with the iron-safe clause, without requiring a finding that, at the time the agreement was made, the agent had knowledge of the destruction of the books.

3. It is insisted that what the special agent did, could be no waiver because he took a written agreement from plaintiff that an investigation into the cause of the fire and the amount of the loss, should not waive any right of either party. Testimony for the plaintiff goes to show that instrument was produced and plaintiff's signature obtained after there had been an agreement to settle the loss. We have recognized the right of an insurance company to protect itself by such an instrument, and likely defendant is protected against any waiver or estoppel which might be asserted from an inquiry into the cause and the extent of the loss. [Keet-Rountree Co. v. Ins. Co., 100 Mo. App. 504, 74 S. W. 469.] But there is nothing in the terms of the so-called non-waiver agreement to protect the company against the consequences of an adjustment or settlement. The document provided merely that any action taken by the insurance company in investigating and ascertaining the cause of the fire and the amount of damage done, should not create a waiver or invalidate any of the conditions of the policy. It is not clear that an investigation of those matters would waive a forfeiture had no non-waiver writ-

ing been taken. But according to the testimony for plaintiff, the special agent did more. He agreed to settle the loss, stated the mode in which the settlement would be made and declared, after he knew the books had been destroyed, that the indemnity would be paid without contest. The rule is that such conduct waived any previous ground of forfeiture, and the non-waiver instrument neither prevents, nor undertakes to prevent, the operation of the rule.

4. It is said that the instructions permitted a recovery on an alleged accord, which was first set up as a cause of action in the reply. When a waiver is relied on, we prefer to see it stated in the petition. But it is not true that the action is on an accord or new agreement made between the adjuster and plaintiff after the fire, instead of on the original contract. In insurance litigation, waiver of conditions may be proved under an averment of performance. This rule enabled plaintiff to give evidence under his petition, going to show the iron-safe clause was waived by Stephens when the policy was written; or, if it was not, that a forfeiture for non-compliance with it was waived by a settlement. The policy itself provided for an adjustment of the loss and the act of the special agent in adjusting it was but carrying out the original contract, and constituted no new promise on which plaintiff sued. This was adjudged in Gerhart Realty Co. v. Ins. Co., 86 Mo. App. 598.

5. The court instructed that if the jury found the company issued the policy sued on, and while it was in force, and without fault of plaintiff, part of the property was destroyed, and plaintiff made proofs of loss on blanks furnished by the company, or if such proofs were waived by the company, the jury should find the issues for plaintiff and assess his damages at the value of the goods so burned, not exceeding $500. That instruction omitted any mention of the defense in the case and au-

thorized a verdict for plaintiff on a finding of facts, none of which was contested. It was erroneous.

The judgment is reversed and the cause remanded. All concur.