**AUTOMOBILE UNDERWRITERS CORPORATION, Attorney in Fact for State Automobile and Casualty Underwriters, Appellee,**

v.

**Stanley Bryan GRAVES, Appellant.**

**No. 73-1154.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1973.

Decided Nov. 20, 1973.

---

David Collins, Collins & Grimm, Macon, Mo., for appellant.

Terry M. Evans, Trenton, Mo., for appellee.

Before GIBSON and BRIGHT, Circuit Judges, and SMITH, Senior District Judge.[*]

BRIGHT, Circuit Judge.

State Automobile and Casualty Underwriters, through its attorney in fact, Automobile Underwriters Corp., seeks in this action a declaration of nonliability for an accident in which its insured, Albert Gardner, while driving his truck collided with another vehicle and caused injuries to a claimant-appellant, Stanley Graves. The accident occurred more than 75 miles from insured-Gardner's residence at Pattonsburg, Missouri. The insurer relied upon a "Limitation of Use Endorsement"[1] which recited that the insurance did not apply to any accident unless occurring within 75 miles of the insured's residence, but the insurance would apply to an occasional trip if notice of that trip and a nominal premium were mailed to the insurer prior to the commencement of the trip.

In a nonjury action, the district court sustained the insurer's contention and entered a judgment declaring the policy inapplicable to the accident here in question. The injured claimant, Stanley Graves, a party defendant in the declaratory judgment action, brings this appeal, contending that the 75-mile limitation of use provision contained in the policy does not insulate the company from liability. Under the particular circumstances of this case, we agree and reverse the declaration of no liability.

Albert Gardner, age 20, at times here material, owned a 1965 Chevrolet two-ton truck which he used in the hauling of hay and grain. On June 30, 1970, he applied for insurance coverage on this vehicle from the Galpin Real Estate and Insurance Agency at Gallatin, Missouri. Jerry W. Frost, an employee of the agency and an authorized agent for State Automobile and Casualty Underwriters, assisted Gardner in preparing a formal application for insurance requesting coverage for bodily injury, property damage, comprehensive, collision, and uninsured motorist. At that time, Gardner gave Frost a check payable to the agency in the sum of $109, representing the first installment on the annual premium for one year's insurance. Agent Frost then made the fol-

---

* Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. We reproduce the endorsement as an appendix to this opinion.

lowing pencil notation on the policy, "We have bound this coverage Eff: 9:00 A. M. 6–30–70."

The insurer through the Galpin Agency thereafter delivered a standard type insurance contract to Gardner at Pattonsburg, Missouri, naming him and his spouse as insureds. The face of the policy listed coverages consistent with the application, including bodily injury limits of $10,000 for each person, $20,000 for each accident. The policy consisted of four pages of terms and conditions printed in small type and seven attachments including a "Limitation of Use Endorsement." That endorsement recited the following:

> The insurance does not apply to any accident or loss of or damage to the automobile unless such accident, loss or damage occurs in an area within [a] 75-mile radius of the city or town stated as the address of the named insured in the [policy] Declarations * * *.

This endorsement also stipulated that the insurance would apply when the insured automobile was used occasionally on trips beyond the specified radius limitation if the company would not thereby become obligated to file the insurance with any public regulatory body and provided that the insured furnished the insurer advance notice regarding the nature of the trip and paid an additional "trip premium" to the company. The endorsement required mailing of the notice and premium prior to commencement of the trip. Additionally, it specified a trip premium charge of $2.50 for use of the truck not to exceed 500 miles beyond the radius limitation as listed in the endorsement. At the time the insured applied for the policy, the agent explained the radius endorsement as affording coverage for an occasional trip within the state but not for a trip beyond the borders of the state.

On January 25, 1971, the first occasion after obtaining the insurance policy that Gardner drove his truck beyond the 75-mile radius limit, he struck the rear end of another truck driven by appel-

lant-Stanley Graves. Graves sustained neck and back injuries from the accident and brought an action in state court against the insured-Gardner to recover for these injuries. Gardner then demanded that the insurer defend this state court action. The insurer declined, asserting that the policy did not cover the accident since it had occurred outside the 75-mile radius limitation of the policy. On the same ground, the insurer brought this action for a declaration of nonliability under the policy against its insured, Gardner, claimant-Graves, the owner of the truck driven by Graves, and others. As we have already noted, the trial court agreed with the insurer's contention that the policy did not provide Gardner protection against Graves' claim for his bodily injuries.

In sustaining the insurer's contention, the trial court dismissed the action as to all parties except the named insureds (Gardner and his spouse) and ruled the provisions of the endorsement valid, binding, and not waived by the insurer. Only the claimant, Stanley Graves, takes this appeal which the district court authorized to be brought in forma pauperis. Graves urges that the policy applied to the accident for these reasons:

1. The limitation of use endorsement offends the public policy of Missouri.

2. Provisions of Missouri's Motor Safety Responsibility Law require the company to afford coverage of the accident notwithstanding the endorsement.

3. The endorsement is repugnant to other provisions of the policy and should be disregarded.

4. The agent of the insurer made a valid oral contract with the insured which agreement required the company to cover an occasional trip beyond the 75-mile radius without specific advance notice or prepayment of a trip premium.

The insurer disputes these contentions and urges initially that Stanley Graves cannot bring an appeal since the district court dismissed him from the action. We reject this threshold argument. An injured person having a pos-

sible claim against an insurer who has been made a party defendant to an action for declaratory judgment possesses the requisite interest to be heard on appeal notwithstanding that the court in entering a judgment on the merits dismisses the action against all parties other than the policyholder. Hawkeye-Security Insurance Company v. Schulte, 302 F,2d 174 (7th Cir. 1962). The court in *Hawkeye* held:

> Appellee [insurer] voluntarily brought appellant [claimant] into this litigation as a party defendant. Appellant, being a proper party to an actual controversy with appellee, should be heard to assert any proper defense raised by his answer to the complaint. The district court erred in dismissing appellant from this suit. [*Id.* at 177.]

We apply this approach here and hold that Graves possesses standing to seek reversal of the judgment as a whole, including the erroneous dismissal of the action against him.

■ On the merits, we turn first to the issue of whether the oral statements of the agent under the circumstances serve to obligate the company for coverage of the accident here in question. To resolve this issue, we examine closely the policy endorsement in light of the terms of the entire policy, the circumstances surrounding the representation and the applicable Missouri law.[2]

Upon reviewing the whole policy, we are struck by the shifting and springing effect of its territorial coverage provisions. The body of the policy affords protection everywhere in the United States or Canada. The limitation of use endorsement takes that coverage away except within a 75-mile radius of Pattonsburg, Missouri, but the same endorsement reinstates coverage for occasional use beyond 75 miles upon conditions of notice and advance tender of premium, but even then the coverage will not apply if the insurer was "obli-

gated or required to file insurance with any public regulatory body." In relation to this type of insurance policy coverage, the South Dakota Supreme Court has aptly, but in a facetious vein, changed a biblical phrase to read: "The front page giveth but the back page taketh away." Farmers Mutual Automobile Ins. Co. v. Bechard, 80 S.D. 237, 122 N.W.2d 86, 87 (1963). Here though, as to coverage beyond the 75-mile radius, we might note that the endorsement "giveth and then twice taketh away."

The record indicates that Jerry Frost and the agency possessed general authority from the insurer to countersign policies and to act generally for the company. His power extended to binding the insurer to afford immediate coverage upon the insured making an application for insurance. The policy in this case, although issued July 14, 1970, became effective according to its terms from the date of the application on June 30, 1970.

At the time of his application for insurance, Gardner and Jerry Frost discussed the limitation of use endorsement. Gardner testified without dispute to the following:

> Mr. Frost told me about a 75-mile radius and I asked him what happened if I went over it. He said if I went over it once in a while that I would be covered, but if I went out of state that I would have to come in and see him.

The unreported district court opinion relates that "[t]he insurance agent denied any such conversation." This comment is not supported by the record. Agent Jerry Frost, although present in court, did not testify. Mr. Galpin, who operates the Galpin Insurance Agency, did testify at the trial but gave no evidence regarding Gardner's application. Thus, the only testimony in the record on this point establishes that an authorized agent of the insurer represented to

---

2. Missouri law governs the construction and interpretation of this Missouri automobile liability insurance contract. Hartford Accident & Indemnity Company v. Shaw, 273 F. 2d 133, 137 (8th Cir. 1959).

the insured that the policy provided insurance coverage for an occasional in-state trip beyond 75 miles from the insured's residence.

■ As we read the Missouri case law, such a statement to an applicant for insurance by an agent who is shown to be generally authorized to represent an insurer serves to create an oral contract of insurance which binds the agent's principal to provide insurance coverage consistent with the agent's representation.

The Missouri Supreme Court addressed itself to the question of insurance established by oral agreement in Chailland v. M. F. A. Mutual Insurance Co., 375 S.W.2d 78 (Mo.1964). There an applicant requested that a local agent of an insurance company writing automobile liability policies provide him with liability insurance. The agent for the company orally agreed to provide liability insurance for the applicant through an insurance carrier which the agent represented. The insurance carrier did not receive the application nor did it issue any written policy. One week following the transaction with the agent, the applicant's truck struck a horse on the highway, killing the horse and injuring the rider. The injured party sued the applicant and obtained a judgment. Thereafter, the injured party sought to collect his judgment by garnishing the insurance company. In holding the insurance company liable for the loss, the court said:

It is the law that "In the absence of
> We have concluded that an agent authorized to execute a written binder of insurance must be held to have the apparent authority to make an oral contract of binder unless, of course, notice of any restriction against such power is brought home to a person dealing with such agent. It is a well-settled general rule that an agent who is authorized to issue or execute policies has the authority (at least apparent) to bind his company by an oral contract of insurance. * * * The rule is established in this state that a resident agent of a foreign insurance company may bind his principal upon an oral contract of insurance. This rule is held to apply, regardless of his actual authority, because of a statute which requires that the agent countersign all policies issued. . . . And the [other] cases indicate that the agent of a domestic company may so bind his company by an oral contract. [375 S.W.2d at 82–83 (citations omitted).]

Subsequently, in a case somewhat more analogous to the oral contract presented here, the Missouri Court of Appeals in Baker v. St. Paul Fire & Marine Ins. Co., 427 S.W.2d 281 (Mo.App. 1968), ruled that an insurance agent's oral assurance given to an applicant for medical expense insurance that coverage would be "effective this minute" bound the company to pay medical expense claims incurred by the insured immediately following the application but prior to the actual issuance of the policy, notwithstanding the fact that the written policy afforded medical expense coverage commencing only after the issuance of the policy. The court stated:

> It is the law that "In the absence of fraud on the part of insured and the agent, an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of his real or apparent authority, notwithstanding they are in violation of private instructions or limitations on his authority, of which the person dealing with him, acting in good fath [sic], has neither actual nor constructive knowledge. 44 C.J.S. Insurance § 149, pp. 817–818. Mitchell v. Metropolitan Life Ins. Co., Mo.App., 116 S. W.2d 186." [427 S.W.2d at 285–286.]

*Accord, see* Smith v. Hartford Fire Ins. Co., 272 S.W. 700 (Mo.App.1925); Woolfolk v. Home Ins. Co., 202 S.W. 627 (Mo.App.1918); Fields v. German American Ins. Co., 140 Mo.App. 158, 120 S.W. 697 (1909).

We recognize, however, that some Missouri decisions do not recognize as binding on the insurer an oral represen-

tation of an insurance agent of policy coverage broader than terms contained in the written policy. Legler v. Meriwether, 391 S.W.2d 599 (Mo.App.1965); Blew v. Conner, 310 S.W.2d 294 (Mo. App.1958); Graham v. Gardner, 233 S. W.2d 797 (Mo.App.1950). In these cases the courts have rejected the extension of coverage beyond the written terms of the policy on a waiver or estoppel theory noting, for example, "that while estoppel may prevent an insurer from asserting a defense *to coverage otherwise provided* by an insurance policy it cannot be used to create insurance coverage where it would not otherwise exist." *Legler,* 391 S.W.2d at 602 (emphasis in original).

The application of such a rule, however, would still not justify affirmance in this case, since the agent's representation did not serve to broaden the coverage contained in the policy itself. In substance, the agent correctly stated that the policy provided coverage for an occasional trip, but he failed to advise the insured of the need to give advance notice and prepay a premium for such trip.

Under Missouri law Jerry Frost's agreement to provide insurance for an occasional trip beyond the 75-mile radius limitation bound the insurer to afford coverage for such trip. Of course this oral agreement for insurance coverage will not bar the company from collecting the additional premium of $2.50 as specified by the policy for the trip in question.

■ Appellant urges that provisions of the policy reciting that by acceptance of the policy the insured agrees "that this policy embodies all agreements" and a condition of the policy reciting that notice or knowledge of an agent does not waive or change any provision of the policy serves as an effective bar to any claim by the appellant that the policy provisions could be changed, modified or altered by an agent's oral agreement.[3]

■ This assertion of appellant is without merit. Under Missouri law the agent's apparent authority provides the basis for binding the insurer-principal to the agent's contract. *See* Ross-Langford v. Mercantile Town Mut. Ins. Co., 97 Mo.App. 79, 71 S.W. 720 (1902). Thus limitations upon an agent's actual authority in the absence of actual or constructive notice will not restrict the binding effect of a representation made within the agent's apparent authority. Baker v. St. Paul Fire & Marine Ins. Co., *supra,* 427 S.W.2d at 285–286; Chailland v. M. F. A. Mutual Insurance Co., *supra,* 375 S.W.2d at 82–83.

The defense of no coverage in this case rests upon a technicality at best. Such conduct does not conform with the high obligation an insurer owes to the insured as well as the public. *See* Carter v. Aetna Casualty and Surety Co., 473 F.2d 1071 (8th Cir. 1973). An insurer that has appointed an agent and authorized him to explain, in simple language, a complex rider which will be attached to the policy, should not be heard to

3. The policy contains the following language:
26. Declarations. By acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements, other than the Subscriber's Agreement contained in the application of the insured named in Item 1 of the declarations which Agreement is hereby made a part hereof, existing between himself and the company or any of its agents relating to this insurance.
22. Changes. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by a duly authorized representative of the company.

deny coverage because the agent's explanation, though substantially correct, did not incorporate certain technical requirements of notice contained in the policy rider.

For these reasons we reverse and remand this case for the entry of an appropriate judgment declaring the policy in full force and effect for the accident here in question.

## APPENDIX

9 - 6 C2

### LIMITATION OF USE ENDORSEMENT

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective _____, forms a part of Policy No. _____
(12:01 A.M., standard time)

issued to _____

by     **STATE AUTOMOBILE AND CASUALTY UNDERWRITERS**
_____

It is agreed that such insurance as is afforded by the policy applies to ownership, maintenance or use of any automobile to which such insurance applies subject to the following provisions:

1. The insurance does not apply to any accident or loss of or damage to the automobile unless such accident, loss or damage occurs in an area within __75__ mile radius of the city or town stated as the address of the named insured in the Declarations, except as follows:

2. It is further agreed that

3. It is agreed that the insurance will apply when any automobile to which such insurance applies is used occasionally on trips beyond the area stated above provided the company shall not be obligated or required to file the insurance with any public regulatory body and the company is furnished (1) notice in advance of such intended use (2) a description of the automobile (3) approximate number of road miles to be travelled (4) Policy number (5) commodities transported (6) starting date and duration of the trip and the required trip premium as set out below is paid to the company. Such premium for the trip and other information must be mailed in an envelope bearing postmark indicating same was mailed and postmarked prior to commencement of the trip.

The additional premium for each such occasional trip is based on the following schedule of rates:

| ROAD MILES TRAVELLED BEYOND RADIUS | S | ST |
|---|---|---|
| Trips (miles travelled) less than 500 miles beyond radius stated above. | $2 50 | $5.00 |
| Trips (miles travelled) in excess of 500 miles beyond radius stated above: | | |
|     Straight Truck   — $0.50 per 100 miles or fraction thereof. | | |
|     Tractor semi-trailer   — $1.00 per 100 miles or fraction thereof. | | |
| Increase rates 100% if policy affords collision coverage on any automobile used on trip. | | |
| "S" applies to trucks. "ST" to tractor semi-trailer. Use "ST" rate for truck and trailer. | | |

All other terms and conditions remain unchanged.

*V. Heath Galpin*
Authorized Representative