## PENNSYLVANIA FIRE INS. CO. v. HUGHES.

### (Circuit Court of Appeals, Fifth Circuit. April 23, 1901.)

### No. 985.

1. INSURANCE—AVOIDANCE OF POLICY FOR BREACH OF CONDITIONS—OWNERSHIP OF PROPERTY.

It is the settled law of Alabama that a vendee of land in actual possession, exercising acts of ownership under a valid executory contract of purchase, and holding the bond of the vendor to make title upon full payment of the purchase money, a portion of which remains unpaid, is the unconditional and sole owner in fee simple of said land, within the meaning of a policy of insurance which is conditioned that "the entire policy shall be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple." Held, that the same rule as to title applies with equal or greater reason to personal property which passes by delivery, unless the parties have expressly stipulated otherwise.

2. SAME—CONSTRUCTION OF POLICY—CONDITIONS.

The conditions of forfeiture in an insurance policy must be construed strictly against the insurer and in favor of the insured, and a vendor's lien on personal property cannot be construed as a chattel mortgage to avoid a policy under a condition making it void "if the subject of insurance be personal property and  *  *  * incumbered by a chattel mortgage."

3. SAME—ESTOPPEL—GROUNDS OF DENYING LIABILITY.

A nonwaiver agreement signed by a policy holder after a loss, the purpose of which is to enable the agent of the company to negotiate with regard to the facts of the loss, value of property, etc., without any waiver by the company of its right to contest its liability, is not to be extended by construction beyond its terms, and does not prevent the company from being bound by its statement, made after it had fully investigated the facts, of the grounds on which it denied liability, and which it also set

up as its original defense in an action on the policy; and it is estopped to plead additional defenses on the eve of trial.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

On January 12, 1898, J. B. Hughes, the defendant in error, purchased a foundry property, consisting of an acre of land, more or less, described by metes and bounds; "also all the fixtures, tools, and implements on said property used in connection with the foundry situate on said property, and now in the possession of said J. B. Hughes." The consideration for this purchase was one promissory note for $1,500 executed by Hughes to the vendor on the day of the purchase, payable, with interest, at the office of the Jasper Land Company (the vendor), in Jasper, Ala., and to become due on January 1, 1903, and bearing interest at the rate of 6 per cent., payable annually on the 1st day of January. The vendor executed and delivered to the purchaser a title bond by which it bound itself to the purchaser in the sum of $1,500, conditioned that "if, upon the payment of the note promptly at maturity, with interest, as herein stipulated, the said Jasper Land Company causes to be made or makes to the said J. B. Hughes, heirs and assigns, a good and sufficient title to the aforesaid real estate and personal property, then this obligation to be void; otherwise, to remain in full force and effect." On April 28, 1899, Hughes insured this property with the plaintiff in error. The policy provides: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof, or if the interest of the insured in the property be not truly stated herein, * * * or if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple, or if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage." In the application for this insurance, under the item "Title," the applicant is asked, "Is your ownership of property to be insured absolute, unqualified, and undivided?" to which he answered, "Yes;" and under the item "Incumbrance" he was asked, "Is there any lien or mortgage on the property? If so, for what amount?" which he answered, "No." On May 25, 1899, the property insured under policy 22 in the Pennsylvania Fire Insurance Company on the 28th day of April, 1899, was totally destroyed by fire, with the exception of the frame office building. The insured gave notice to the company that the loss had been sustained, and Mr. George G. Adams, an adjuster, went to see the insured about the fire. They went to the scene of the fire, and the adjuster examined and noted the condition of things. He then told the insured that he wanted to see his deed to the property and to know what he gave for it, and asked him to get it and bring it over to the hotel, which the insured did. The adjuster testified: "It was there that I discovered that he held a bond for title. He showed it to me, and I had his application for insurance, and called his attention to the answer that he had made to the question, 'Is your ownership of the property to be insured undivided, unqualified, and in fee simple?' and to his answer to it, 'Yes,' and to the question, 'Has any other person a claim on the property to be insured?' and whether there was any incumbrance or lien or mortgage on the property, and to his answer, 'No.' And I called his attention to the bond for title, and told him that, in my opinion, there was a lien upon the property; and I told him that the bond for title did not give him a fee-simple title, and that I could not talk any more to him. * * * I called his attention to all that part of the policy beginning with the words, "This entire policy shall be void,' and ending down to the word 'thereof.' I also called his attention to these words in the policy: 'or if the interest of the insured shall be other than sole or unconditional ownership.'" The adjuster, Adams, made a second trip to Jasper, under instruction to go there and ascertain from the local agent, Mr. Bush, whether the fact of the bond for title was known to him (the local agent) when he issued the policy. On this second trip he met Mr. Hughes on the business of this loss, and told him that he (Adams) could not talk with him (Hughes) unless he signed a nonwaiver agreement, which he agreed to do after Adams showed it to him and explained what the intention of it was.

Adams swears: "He signed it, and then I discussed with him the value of the property, but could not agree with him and left. I asked him if he had made a proof of loss, and called his attention to the fact that the agreement did not waive proof of loss, and that he had only sixty days in which to make it, and that ended our conversation." The nonwaiver agreement is not dated, but the local agent, Bush, testified that it was signed on June 7, 1899. It provides that any action, request made, or information received by the insurance company in or while investigating and ascertaining the cause of fire, the amount of loss or damage, or other matter relative to the claim of the insured for property alleged to have been lost or damaged by fire on the 25th of May, 11 p. m., 1899, shall not in any respect or particular change, determine, waive, invalidate, or forfeit any of the terms, conditions, or requirements of the policy of insurance, or any of the rights whatever of any party thereto, and concludes with the following paragraph: "The intent of this agreement is to save and preserve all the rights of all the parties, and permit an investigation of the claim and the determination of the amount of the loss or damage, in order that the party of the first part may not be unnecessarily delayed in his business, and that the amount of his claim may be ascertained and determined without regard to the liability of the party of the second part, and without prejudice to any rights or defenses which the said party of the second part may have."

On July 24, 1899, the insurance company addressed to the insured the following letter: "Dear Sir: We are in receipt of an envelope inclosing paper dated July 8th, 1899, and sworn to by you before Jas. W. Shepherd, judge of probate, which, we take it, is intended as proofs of loss under policy #22 of the Pennsylvania Fire Insurance Company. Without in any manner admitting liability, and expressly reserving all rights under said policy, we are compelled to return you this paper as being entirely insufficient if intended as proof of loss under your policy. We call your attention generally to the requirements contained in lines 70 to 80, inclusive, of your policy, and particularly to the provisions of lines 72 and 73, requiring that the interest of the assured and of all others in the property shall be set forth, and all incumbrances thereon, and would request that, in complying with the conditions of the policy in regard to the proofs of loss, you particularly set forth fully exactly the state of the title to said property, both at the time of the issuance of the policy and at the time of loss, and also the same as to incumbrances. Upon receipt of your proofs containing this information, this company will then be able to determine its proper course." On July 31, 1899, it addressed to him the following letter: "Dear Sir: Your favor of July 27th, inclosing papers heretofore sent us as proofs of loss, and also paper purporting to be supplemental proofs, have been received and noted. I notice by the paper entitled 'Supplemental Proofs' that the property insured is not owned by you, but all you have is a bond for title interest, the legal title being in the Jasper Land Company. I call your attention to lines 16, 17, and 18 of your policy, which provide that the policy should be void, unless otherwise provided by written agreement indorsed thereon or added thereto, 'if the interest of the assured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the assured in fee simple, or if the subject of insurance be personal property, and he or become incumbered by a chattel mortgage.' Your interest in the property is not unconditional and sole ownership, but merely an equitable interest under a conditional bond for title; the building is on ground not owned by you in fee simple; and, as to the personalty, it is unquestionably incumbered. The company must therefore decline to pay said loss, and deny liability, on the ground of the violation of the above clauses of its contract, as shown by your supplemental proofs of loss. I have written this letter immediately upon receiving your proofs. It is proper that I should also call your attention to the fact, while in no way retracing said denial of liability, that the proofs offered are still not in compliance with the conditions of the policy. It fails to give a copy of all descriptions and schedules in all policies. It fails to state by whom and for what purpose the building described and the several parts thereof were occupied at the time of the fire. It fails to furnish any magistrate's or notary public's certificate. It fails to state anything as to the origin of the fire.

These latter criticisms are, however, made simply in reply to your request that we should advise you if the proofs should not conform to the policy requirements, and with no intention of in any way modifying the denial of liability herein made." And on August 21, 1899, it addressed to him the following: "Dear Sir: We are in receipt of your registered letter of August 12th, containing papers purporting to be proofs of loss under policy #22 of the Pennsylvania Fire Insurance Company. The additional information contained in these papers serves to convince us more strongly that you have no legal claim against the Pennsylvania Fire Insurance Company under its policy #22, issued by its agent at Jasper, Ala. In these papers you admit that your only claim to ownership to the property destroyed is based on bond for title, for which you paid no cash, but only gave a note on the 12th of January to the Jasper Land Company for the sum of only $1,500, not payable until the first of January, 1903. The papers you submit under date of August 12th claim the value of the property to be $5,670.25, while in the same papers you state that you gave a four-years note for only $1,500 for the entire property. According to your own admission, you had no title to the property; and the policy under which you make claim distinctly sets forth that 'if the interest of the assured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the assured in fee simple, or if the subject of insurance be personal property, and be or become incumbered by a chattel mortgage,' then the policy shall be void. Under the circumstances above mentioned, we are constrained to repeat our denial of liability."

On August 29, 1899, this action was brought on the policy. The defendant filed six pleas, the first three of which amounted to the general issue. The fourth plea sets up a forfeiture of the policy on the ground that the plaintiff was not the unconditional and sole owner of the property insured. The fifth plea was to the effect that a part of the property insured was personal property which was incumbered by a chattel mortgage at the time the policy was issued. These pleas were filed on the 23d day of November, 1899. On January 6, 1900, six days before the trial, the defendant filed another special plea, setting up that the plaintiff had misrepresented or concealed the fact that there was a lien on the property at the time the policy of insurance was issued, and that the property was incumbered by a lien for the purchase money, the plaintiff having only a bond for title thereto. The plaintiff filed a general replication to each of these pleas, and also certain special replications. Some of them set up a waiver of the alleged forfeiture of the policy on the ground that the defendant had requested the plaintiff to submit proofs after it had become fully informed of all the facts set up in the pleas, which he did submit at much expense and inconvenience to himself. Others of the replications alleged that, after the defendant had become fully informed of all the facts and circumstances set up in the pleas, it denied liability, and refused to pay the loss, solely on the ground that the plaintiff was not the unconditional and sole owner of the property insured, that the building was on ground not owned by the plaintiff in fee simple, and that the personalty was incumbered by a chattel mortgage. The defendant demurred to these replications. The demurrers were overruled. When the testimony had closed, and the argument of counsel had been heard, the court instructed the jury to return a verdict for the plaintiff.

Wm. A. Walker, for plaintiff in error.

E. H. Cabiness and S. D. Weakley, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, having stated the case as above, delivered the opinion of the court.

There are no contested issues of fact involved in this case. All of the substantial facts are either admitted or accepted as established by undisputed evidence. The questions arising thereon, and in reference to which there is contention, are all questions of law.

The assignment of errors embraces 22 specifications. Counsel for the plaintiff in error insists on those numbered 7, 8, 9, 10, 21, and 22. The first 4 are based on the action of the court in overruling the demurrer of the defendant to the third, fourth, fifth, and sixth replications to the sixth plea. The last 2 are based on the court's action in directing a verdict for the plaintiff. These assignments raise the following questions: (1) Whether the plaintiff in the court below was the sole and unconditional owner of the property insured, and owned the buildings in fee simple. (2) Whether the personal property insured was incumbered by a chattel mortgage. (3) Whether the defendant was estopped, by demanding proofs of loss or denying liability prior to the suit solely on the ground that the plaintiff was not the unconditional and sole owner of the property, that he did not own the building in fee simple, and that the personal property was incumbered by a chattel mortgage, from afterwards setting up the other grounds of forfeiture, to be found in the sixth plea, namely, the misrepresentation or concealment by the defendant that there was a lien on the property for the unpaid purchase money. (4) Whether, under the evidence, the court was justified in directing a verdict for the plaintiff.

In a comparatively recent and well-considered case, the supreme court of Alabama has held, as expressed in the headnote, which accurately formulates the doctrine of the decision, that:

"A vendee of land, in actual possession, exercising acts of ownership under a valid executory contract of purchase, and holding the bond of the vendor to make title upon full payment of the purchase money, a portion of which remains unpaid, is the unconditional and sole owner in fee simple of said land, within the meaning of a policy of insurance which is conditioned that the 'entire policy shall be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple'; and, as to an insured holding such interest, a policy with this condition is not void, but can be enforced at the suit of the insured." Loventhal v. Insurance Co., 112 Ala. 108, 20 South. 419, 33 L. R. A. 258.

The distinguished counsel for the plaintiff in error accepts this authority as conclusive as to the real estate, but he insists, notwithstanding, that the proper construction of the bond, so far as the personal property is concerned, is that it amounted only to a conditional sale. The property denominated "personal," the subject of this contention, is described in the bond for title as being the fixtures, tools, and implements on the property used in connection with the foundry, situate thereon, and now in the possession of the purchaser. The other proof does not show or indicate with any clearness the extent and the character of the physical connections of the fixtures, tools, and implements to the land and the buildings thereon, so far as to determine to what extent the same had become part of the realty, or had retained their original status as personal property, under the rules of the common law, which is in force in Alabama. But if the common law in force in that state, as construed by its supreme court, declares that as to real property an unconditional estate is conveyed by a bond for title, on the theory that the seller holds a vendor's lien, and the real estate passes to the purchaser subject

to this lien, it seems to us that this theory would have greater force as to personal property, title to which passes by delivery, unless the parties have expressly stipulated otherwise. On the authority of the case of Loventhal v. Insurance Co., just cited, supported as it is by sound reason and abundant precedents, we hold in this case that, within the meaning of the terms used in the provisions of the policy of insurance on which the plaintiff in error relies, the insured was the unconditional and sole owner of all of the property insured, and that the building was owned by him in fee simple.

It cannot be contended, and we understand that it is not, that the vendor's lien to which the personal property in this case may be subject is a chattel mortgage. . Conditions for forfeiture in the printed forms of insurance policies now in general use have been prepared by the insurance companies with studious care, and should be strictly construed against the insurer, and liberally in favor of the insured, when invoked by an insurance company to limit or avoid its liability. No intendment will be indulged to invalidate the policy which the language used does not require. The plaintiff in error having, before suit brought, put its denial of its liability solely on the ground that the insured was not the unconditional and sole owner of the property, that he did not own the building in fee simple, and that the personal property was incumbered by a chattel mortgage, and having placed its original defense to the action on the same ground, as shown by its fourth and fifth pleas, should not be allowed to set up the additional ground presented in the sixth plea, six days before the trial, unless the settled rules of decision on this subject are avoided or qualified by the nonwaiver agreement. Like the forfeiture provisions of the policy, above referred to, if not more strictly, the language of this agreement should be construed strongly against the company, and liberally in favor of the insured. Without undertaking to define exhaustively its scope, it seems clear to us that it cannot reasonably be construed to take out of the operation of the general law on the subject the action of the company itself, as evidenced by the letters set out in our statement of the case, and by the special pleas in its original defense to the action. As the case, in our view of it, presents only questions of law, which should be resolved in favor of the plaintiff below, we conclude that the circuit court did not err in directing a verdict for the plaintiff, and the judgment is affirmed.