## J. B. BEAUCHAMP v. RETAIL MERCHANTS ASSOCIATION, Mutual Fire Insurance Company.

(165 N. W. 545.)

**Fire insurance contract — object of — indemnity — forfeiture stipulations in — constructions of — policy followed — forfeiture not favored.**

1. The object of a fire insurance contract is to afford indemnity; and for-

NOTE.—In deciding just what books and inventories must be kept in a safe to constitute substantial compliance with the provisions of the iron safe clause in a policy of insurance, the courts are not inclined to favor forfeitures of policies because of technical violations, as will be seen by an examination of the cases collated in a note on the subject in 15 L.R.A. (N.S.) 471, from which it appears that although no statement of the general rule has been found, there is a noticeable uniformity in the decisions, allowing the insured to recover, where the information as to the condition of the business, contained in the destroyed books or inventories, can be obtained from order sources.

On waiver of provisions as to keeping of books and vouchers in safe or safe place, see notes in 51 L.R.A. 698; 28 L.R.A. (N.S.) 337, and L.R.A.1915F, 759.

On the force and effect of iron safe clauses in policies of insurance, see note in 78 Am. St. Rep. 227.

feiture stipulations and conditions in the policy will be construed, if possible, so as to avoid forfeiture and afford indemnity.

**Insurance contract — breach of conditions — present or subsequent — violation by the insured — only terminates liability of insurer.**

2. When an insurance contract is conditioned to become void in case there be a breach of condition present or subsequent, the true meaning is, not that the instrument is upon a breach thenceforth a nullity and has no legal existence, but only that, upon a violation of the covenants by the insured, the insurer shall cease to be bound by his covenants.

**Conditions in policy — insurer may waive — insured may not lose insurable interest.**

3. The insurer may waive the conditions in the policy relating to forfeiture and nonwaiver, except when the insured, by the act, loses his insurable interest.

**Intent only manifested — by insurer — cannot withdraw — except when induced by fraud of insured.**

4. When the insurer has once manifested an intent to waive a forfeiture, it cannot subsequently withdraw the waiver, unless the acts constituting waiver were induced and occasioned by fraud on the part of the insured.

**Forfeiture — waiver — general rule — insurer — acts of — belief of insured — induced by acts of insurer.**

5. As a general rule a forfeiture is waived when an insurer, with knowledge of the act on the part of the insured which works a forfeiture, enters into negotiations with him, and induces him to incur trouble or expense under the belief that his loss will be paid.

**Non-waiver — stipulation in policy — agreement executed by insured after loss — before or during work of adjustment — strictly construed against insurer.**

6. A nonwaiver stipulation in the policy, and a nonwaiver agreement executed by the insured after the loss and before or during the investigation by the adjuster, will be construed strictly against the insurer.

**Stipulation not extended by implication — cause of fire — ascertained by insurer — insurance company bound — acts — conduct — statements — reliance upon.**

7. Such stipulation and agreement will not be extended by implication beyond their exact terms, and do not prevent the insurance company from being bound by statements made and acts performed after it had fully investigated, and to its satisfaction ascertained the cause of the fire and the amount of the loss.

**Waiver — question for jury usually — facts admitted — question of law.**

8. Waiver is ordinarily a question for the jury; but where the facts and circumstances relating to the subject are admitted, or clearly established, and

only one inference can reasonably be drawn therefrom, waiver becomes a question of law.

Opinion filed October 20, 1917.   Rehearing denied December 14, 1917.

From a judgment of the District Court of Cavalier County, Honorable *W. J. Kneeshaw,* Judge, defendant appeals.

Affirmed.

*Pierce, Tenneson, & Cupler,* for appellant.

All of the defenses alleged in the answer are based upon facts within the knowledge of plaintiff, and he therefore cannot claim to be surprised.

When one has full knowledge of all the facts set out in the amendments, he is in no position to claim surprise.   Ennis v. Retail Merchants Asso. Mut. F. Ins. Co. 33 N. D. 20, 156 N. W. 234; Southern Ins. Co. v. Hastings, 64 Ark. 253, 41 S. W. 1093.

But if one can honestly claim surprise he should at once ask for continuance for a reasonable time to prepare.   Helbig v. Grays Harbor Electric Co. 37 Wash. 130, 79 Pac. 612; Straus v. Buchman, 96 App. Div. 270, 89 N. Y. Supp. 226, 184 N. Y. 545, 76 N. E. 1109; 31 Cyc. 751, note 45; 1 Hayne, New Tr. & App. § 54, p. 272.

"The mere fact that the amendment constitutes a departure in pleading, or adds or substitutes a new or different cause of action in the strict sense of those terms, is no good reason for disallowing the amendment."   Cooke v. Northern P. R. Co. 22 N. D. 266, 133 N. W. 306; 2 Elliott, Ev. 920; Rae v. Chicago, M. & St. P. R. Co. 14 N. D. 507, 105 N. W. 721; Kerr v. Grand Forks, 15 N. D. 294, 107 N. W. 197; Martin v. Luger Furniture Co. 8 N. D. 220, 77 N. W. 1003; Anderson v. First Nat. Bank, 5 N. D. 80, 64 N. W. 114; Webb v. Wegley, 19 N. D. 606, 125 N. W. 562; Southern Ins. Co. v. Hastings, 64 Ark. 253, 41 S. W. 1093; 19 Cyc. 931.

They may be allowed after the evidence is in.   31 Cyc. 398 to 406; Farmers' Nat. Gold Bank v. Stover, 60 Cal. 387; Comp. Laws 1913, §§ 7181, 7482, 7483.

"A provision in a surety bond, requiring notice of default to the surety, is one to be performed after the occurrence of the loss or damage for which recovery is sought; and, while a condition precedent to the maintenance of an action, pertains to the remedy, and is not essential

to the binding force.of the contract prior to default, and is not as strictly construed as the conditions involving the essence of the agreement." Van Buren County v. American Surety Co. 137 Iowa, 490, 126 Am. St. Rep. 290, 115 N. W. 24; 1 Clement, Fire Ins. p. 410; Ennis v. Retail Merchants Asso. Mut. F. Ins. Co. 33 N. D. 31, 156 N. W. 234; 14 Mod. Am. Law, 46, Waiver & Estoppel.

"An invoice of goods purchased is not an inventory of stock to be produced under the 'iron-safe clause' in an insurance policy." Southern F. Ins. Co. v. Knight, 111 Ga. 622, 52 L.R.A. 70, 78 Am. St. Rep. 216, 36 S. E. 821; Scottish Union & Nat. Ins. Co. v. Weeks, 55 Tex. Civ. App. 263, 118 S. W. 1086; Phœnix Ins. Co. v. Sherman, 110 Va. 435, 66 S. E. 81; German American Ins. Co. v. Fuller, 26 Okla. 722, 110 Pac. 763; Houff v. German American Ins. Co. 110 Va. 585, 66 S. E. 831; Teutonia Ins. Co. v. Tobias, — Tex. Civ. App. —, 145 S. W. 251.

If the destruction of the inventory and books was due to the negligent failure of the insured to preserve them as required by the "iron-safe clause," his failure to produce them in accordance with the provisions of the policies will preclude any recovery thereon. Southern F. Ins. Co. v. Knight, 111 Ga. 622, 52 L.R.A. 73, 78 Am. St. Rep. 216, 36 S. E. 821; Arkansas Ins. Co. v. Luther, 85 Ark. 579, 109 S. W. 1022; Shawnee F. Ins. Co. v. Kneer, 72 Kan. 385, 83 Pac. 611, 613; Goldman v. North British Mercantile Ins. Co. 48 La. Ann. 223, 19 So. 132; King v. Concordia F. Ins. Co. 140 Mich. 258, 103 N. W. 616, 6 Ann. Cas. 87; Ætna Ins. Co. v. Mount, 90 Miss. 642, 15 L.R.A. (N.S.) 471, 44 So. 162, 45 So. 835; Cobb & S. Shoe Store v. Ætna Ins. Co. 78 S. C. 388, 58 S. E. 1099; Western Assur. Co. v. Kemendo, 94 Tex. 367, 60 S. W. 661, reversing — Tex. Civ. App. —, 57 S. W. 293; Continental Ins. Co. v. Cummings, 98 Tex. 115, 81 S. W. 705, reversing — Tex. Civ. App. —, 78 S. W. 378; Rives v. Fire Asso. of Philadelphia, — Tex. Civ. App. —, 77 S. W. 424; Allred v. Hartford F. Ins. Co. — Tex. Civ. App. —, 37 S. W. 95; Fire Asso. of Philadelphia v. Calhoun, 28 Tex. Civ. App. 409, 67 S. W. 153; Yates v. Thomason, 83 Ark. 126, 102 S. W. 1112; St. Landry Wholesale Mercantile Co. v. New Hampshire F. Ins. Co. 114 La. 146, 38 So. 87, 3 Ann. Cas. 821.

"A mere offer to compromise is not a waiver of breaches of the con-

ditions of the policy." 19 Cyc. 804, 805; McCormick v. Orient Ins. Co. 86 Cal. 260, 24 Pac. 1003.

Neither can the conduct of the company's agent or adjuster, in trying to effect a compromise settlement, be regarded as a waiver. City Drug Store v. Scottish Union & Nat. Ins. Co. — Tex. Civ. App. —, 44 S. W. 21; Holbrook v. Baloise F. Ins. Co. 117 Cal. 561, 49 Pac. 555.

*Grimson & Johnson,* and *Linde & Murphy,* for respondent.

Special defenses must be specifically set forth in the answer in order to be available in an action on the policy. Ennis v. Retail Merchants Asso. Mut. F. Ins. Co. 33 N. D. 20, 156 N. W. 234.

A defense based upon a failure to comply with the so-called "iron-safe clause" in the policy is merely technical. 1 Hayne, New Tr. & App. § 54, p. 272; Ennis v. Retail Merchants Asso. Mut. F. Ins. Co. supra; Comp. Laws 1913, § 7482.

No representations or warranties in the application or policy can be deemed material so as to defeat or avoid such policy, where, as in this case, no contention is or can be made that the insured made the same with intent to deceive, or that matters claimed to have been misrepresented or warranted against increased the risk of loss. Continental F. Ins. Co. v. Whitaker, 112 Tenn. 151, 64 L.R.A. 451, 105 Am. St. Rep. 916, 79 S. W. 119, and cases cited; Comp. Laws 1913, § 6501; Soules v. Brotherhood of American Yeoman, 19 N. D. 23, 120 N. W. 760.

It has also been held that, in order to work a forfeiture of the policy, there must be a failure of not only one, but of all, the conditions of the clause. Connecticut F. Ins. Co. v. Jeary, 60 Neb. 338, 51 L.R.A. 698, 83 N. W. 78.

CHRISTIANSON, J. On July 29, 1914, the defendant issued to the plaintiff an insurance policy of the usual standard form adopted in this state, whereby it insured the plaintiff against loss or damage by fire in the sum of $3,000, upon a certain stock of merchandise in plaintiff's store at Olga, in Cavalier county, in this state. The stock was also insured in the sum of $2,500 by another insurance policy issued by the Northwestern Mutual Fire Insurance Company. This latter policy also insured household goods belonging to plaintiff in the sum of $500. On January 22, 1915, the stock of merchandise was, together with

the building wherein it was contained, accidentally, totally destroyed by fire. The plaintiff immediately notified the defendant, and the Northwestern Mutual Fire Insurance Company of the loss, and these two companies sent their adjuster, one Larkin, to adjust the losses. Larkin arrived about three weeks after the fire. Upon his arrival at Olga he asked for the books of account, and was informed by the plaintiff that they were in the safe, which was still lying on the ground, close to the place where the fire had occurred. A blacksmith was sent for, who broke open the safe, and Larkin and the plaintiff took the books and papers to plaintiff's house and looked them over. In examining the books it was discovered that a book in which plaintiff kept the record of his purchases had been destroyed by the fire. Plaintiff informed Larkin that this book had been left on the plaintiff's desk, the night the fire occurred. The safe, however, contained a ledger in which accounts were kept of all the goods sold on time, and the plaintiff informed Larkin that the cash received from cash sales had been deposited in the Bank. Larkin, upon receiving this information, went to the bank and examined the bank books to ascertain the amount of such sales. Larkin arrived at Olga in the forenoon, and left on the morning of the day following. Before leaving he requested plaintiff to accompany him to Grand Forks. Two versions are given of the reasons for such request. Plaintiff says: "He asked me if I would go with him to Grand Forks or Fargo, and look over the ledger, and he said we had some work to do, and that we could do it better there, and I went with him." Larkin says that some discussion arose with respect to the last inventory taken in March, 1914; that plaintiff stated he believed that this inventory had been sent to the Grand Forks Mercantile Company, and that it was principally for this reason that he suggested that plaintiff accompany him to Grand Forks. The Grand Forks Mercantile Company, however, did not have such inventory. Mr. Larkin thereupon requested that he (plaintiff) write the various wholesale houses and obtain from them statements or inventories of the goods which they had sold to the plaintiff since the last inventory was taken on March 1, 1914, and Larkin prepared a form of the letter to be so sent. Plaintiff acted in accordance with this request, and prepared and sent letters to the various wholesale houses, and obtained statements or inventories from them. He also obtained statements from the bank.

These statements and inventories he submitted to Larkin. At Larkin's request plaintiff came to Fargo, where they went over the whole matter. Larkin testified that, from the information furnished him by the plaintiff, he determined that the goods destroyed were worth $4,204.62. The policies limited the liability of the insurers to three fourths of the actual value of the goods insured, and, hence, Larkin fixed the amount of liability of the companies under the two policies at $3,153.47; defendant's proportion of such liability being approximately $1,720.

On his direct examination Larkin testified:

Q. *Did you as adjuster have these two companies agree to settle for this amount ($3,153.47)?*

A. *I did.*

It appears from Larkin's testimony that, in fixing the value of the goods, he deducted 20 per cent from the wholesale prices for depreciation. Larkin claims that there was little or no dispute between him and the plaintiff with respect to the basis on which he computed the amount of loss. This, however, is denied by the plaintiff, who claims that there was a difference of opinion between them as to the amount to be allowed for depreciation, cost of handling, and matters of that kind. Plaintiff further claims that Larkin refused to take into consideration statements furnished by some of the wholesale houses; that the bank account represented, in addition to the moneys received from cash sales made at the store, the proceeds of certain grain raised by plaintiff upon farms owned by him, and that Larkin refused to deduct these items. Larkin, on the other hand, claims that the statements were all considered, and that he deducted the amount of the deposits represented by the sale of grain. It is undisputed, however, that they were unable to agree upon the amount of the loss, and that plaintiff refused to accept the amount offered, claiming that the stock at the time of the fire had an actual value of approximately $12,000.

The present action was brought, and the summons and complaint therein served on the defendant on April 18, 1916. The defendant appeared and answered on May 15, 1916. Notice of trial was served on June 2, 1916, noticing the case for trial at the term appointed to commence on June 13, 1916. The June term was adjourned until July 3, 1916. On July 3, 1916, defendant's attorneys mailed an

amended answer to plaintiffs' attorneys with request that they consent to the proposed amendments. The amendments averred that plaintiff had failed to comply with the provisions of the policy with respect to taking inventories, and keeping such inventories and books of account correctly detailing purchases and sales of stock securely locked in an iron safe during the hours the store was closed for business. Plaintiff's attorneys refused to consent to the amendments. Defendant's attorneys thereupon, on July 12, 1916, served upon plaintiff's attorneys an application for leave to serve and file a proposed amended answer, accompanied by an order to show cause, returnable on July 17, 1916. The application was presented to the court immediately before the cause was called for trial, and a jury therein selected, but, owing to the absence of one of plaintiff's counsel, it was not argued until the day following, and during the interim the trial jury had been selected. The only showing made in support of the application to amend consisted of an affidavit by one of defendant's attorneys, setting up the facts with respect to the preparation of the proposed amended answer, the mailing thereof to plaintiff's attorneys with the request that they consent to · the proposed amendments, and their refusal to do so. No showing whatever was made for the failure on the part of defendant's counsel to fully assert the proposed defense in the original answer. Plaintiff's attorneys objected to the allowance of the proposed amendments on various grounds. The trial judge sustained the objection, stating that he did not believe the allowance of the amendments would be in the furtherance of justice. The motion to amend was renewed at the close of plaintiff's case, and was again denied by the court. The jury returned a verdict in plaintiff's favor for the full amount of the policy, and defendant has appealed from the judgment.

The errors assigned are all predicated upon a so-called "iron-safe clause" in the policy, which reads as follows: "It is expressly stipulated that the assured shall take an inventory of the stock hereby covered at least once a year during the life of this policy, and shall keep books of account correctly detailing purchases and sale of said stock, and shall keep said inventory and books securely locked in an iron safe during the hours that said store is closed for business. Failure to observe these conditions shall work a forfeiture of all claims under this policy."

Appellant contends: (1) That the court erred in denying plaintiff's application for leave to amend the answer: (2) that the evidence shows that plaintiff had failed to comply with the iron-safe clause in the policy; that such failure rendered the policy void, and that the court should have directed a verdict in defendant's favor.

Appellant has anticipated that it might be claimed that it has waived plaintiff's noncompliance with this clause. Appellant has therefore pointed out in its brief that the policy contained the following provision: "This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part, relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

It is also pointed out that the plaintiff, during the negotiations with Larkin, on March 15, 1915, signed an agreement to the effect that "it is hereby mutually understood and agreed by and between J. B. Beauchamp, of Olga, North Dakota, of the first part, and the Retail Merchants Association Mutual Fire Insurance Company, of Fargo, North Dakota, and other companies signing this agreement parties of the second part, that any action taken by said parties of the second part in investigating the cause of the fire, or investigating and ascertaining the amount of the loss and damage to the property of the party of the first part caused by fire alleged to have occurred on January 29, 1915, shall not waive or invalidate any of the conditions of the policies of the parties of the second part, held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement.

"The intent of this agreement is to preserve the rights of all parties hereto, and provide for an investigation of the fire and the determination of the amount of the loss or damage, without regard to the liability of the parties of the second part."

Appellant contends that, in view of the above-quoted policy provision and nonwaiver agreement, it cannot be held to have waived the forfeiture provisions of the policy.

A fire insurance policy is a contract of indemnity. The sole purpose on the part of the insured in contracting is to obtain such indemnity. The prime obligation on the part of the company is to pay the loss (not exceeding the amount stipulated) in event the property is destroyed by fire. "The object of the contract being to afford indemnity, it will be so construed, in case of doubt, as to support rather than defeat the indemnity provided for." 19 Cyc. 657.

While the parties to an insurance contract may stipulate that the validity of the contract from its inception shall depend upon the existence of certain stated material facts, or that the life and continuation of the policy shall depend upon the continuation or fulfilment of certain material conditions subsequent to the issuance of the policy, such "conditions and exceptions are to be strictly construed against the company and liberally construed in favor of the insured. Stipulations and conditions in the policy are to be so construed, if possible, as to avoid forfeiture and afford indemnity." Ibid. And "when an insurance contract is conditioned to become void in case there be a breach of a condition precedent or subsequent, the true meaning is, not that the instrument is, upon a breach, thenceforth a nullity and has no legal existence, but only that, upon the violation of the covenants by the insured, the insurer shall cease to be bound by his covenants. Inasmuch, therefore, as such conditions are inserted for the benefit of the insurer, they may all be waived by him, except when the insured by the act loses his insurable interest. Even a stipulation that the conditions of a policy cannot be waived, or if waived at all only in a certain manner, may itself be waived." 19 Cyc. 777.

It must be assumed that an insurance company intends to carry out the primary purpose of its contract; and if it sees fit to waive any of the technical conditions of the policy, inserted therein for its own benefit, it is readily permitted to do so. In discussing the subject of waiver and estoppel as applied to such conditions, the American & English Encyclopædia of Law (vol. 16, 2d ed. p. 934) says: "Since the conditions of a policy a breach of which by the assured will give rise to a forfeiture are inserted for the benefit of the insurance company, they may be waived either pending the negotiation for the insurance, or after such negotiation has been completed and during the currency of the policy, and this either before or after the forfeiture is incurred;

and since forfeitures are not favored in the law, the courts are always prompt to seize hold of any circumstances that indicate an election to waive."

While it has been said to be "impossible to assert with any confidence a consistent theory upon which all the adjudications in insurance cases, commonly collected under the topics of waiver or estoppel, may rest," it will be found that the "harmonious principle that pervades the subject seems to be a desire on the part of the courts to hold the company as strictly as possible to the performance of its contract, and to prevent an unfair reliance, on its part, upon technical conditions of the policy." 19 Cyc. 777, 778.

And where an insurance company has once manifested its intent to waive the right to declare a forfeiture, it cannot subsequently withdraw the waiver, unless the waiver was occasioned by fraud on the part of the insured.   19 Cyc. 779, 871, 872.

It is a general rule "that when an insurer, with knowledge of any act on the part of the insured which works a forfeiture, enters into negotiations with him which recognize the continued validity of the policy, and thus induces him to incur expense or trouble under the belief that his loss will be paid, the forfeiture is waived."   14 R. C. L. § 376, p. 1197; see also Beach, Ins. § 753.   And while it is generally held that the insurer and insured may agree, either by a policy provision or by an agreement after loss and before appraisal, that no waiver shall be implied from an investigation of the cause of the fire and the amount of the loss and damage caused to the property insured, such stipulations and agreements, like the forfeiture provisions of the policy, should be construed strictly against the insurer and liberally in favor of the insured.   Pennsylvania Ins. Co. v. Hughes, 47 C. C. A. 459, 108 Fed. 497.   See also 19 Cyc. 656.

Such stipulations and agreements should not be extended by implication beyond their exact terms, and the conduct of the insurer after it passes the stage of investigation and ascertainment will be subject to the same rules as though such stipulation or agreement did not exist. Pennsylvania F. Ins. Co. v. Draper, 187 Ala. 103, 65 So. 923; Rudd v. American Guarantee Fund Mut. F. Ins. Co. 120 Mo. App. 1, 96 S. W. 237; Indiana Ins. Co. v. Pringle, 21 Ind. App. 559, 52 N. E. 821; Pennsylvania F. Ins. Co. v. Hughes, supra; Queen of Arkansas Ins. Co.

v. Malone, 111 Ark. 229, 163 S. W. 771; Arkansas Mut. F. Ins. Co.
v. Witham, 82 Ark. 226, 101 S. W. 721; McCollough v. Home Ins.
Co. 155 Cal. 659, 102 Pac. 814, 18 Ann. Cas. 862.    See also Corson
v. Anchor Mut. F. Ins. Co. 113 Iowa, 641, 85 N. W. 806.    In most
of the above cited cases the nonwaiver agreement was identical with
the one involved in this case.

It will be noticed that the nonwaiver stipulation in the policy is
limited to an appraisal and examination as provided for in the policy.
The nonwaiver agreement is limited to "investigating the cause of
the fire, or investigating or ascertaining the amount of the loss and
damage to the property caused by (the) fire."    The defendant did not
attempt to avail itself of the provision in the policy relative to an
appraisal.

We have already referred to the negotiations between the plaintiff
and the adjuster Larkin.    At no time during these negotiations did
Larkin, or any other representative of either of the insurance companies,
even suggest that the companies were not liable under the policies; or
that the policies had been forfeited by reason of failure on the part of
the plaintiff to comply with the so-called "iron-safe clause."    It is undis-
puted that Larkin, an insurance adjuster of long experience, had full
notice and knowledge of such noncompliance immediately after his
arrival in Olga about three weeks after the fire.    Possessed of such
knowledge he proceeded not only to investigate the fire and determine
the loss, but he also put plaintiff to the trouble and expense of obtain-
ing and furnishing other proof of the facts which would have been
disclosed by the books destroyed by the fire.    He further put plaintiff
to the expense of two trips—one to Grand Forks and one to Fargo—
for the sole and only purpose of furnishing proof as to the amount and
value of the goods destroyed.    This information was necessary only for
the purpose of computing the amount to be paid by the defendants
under the terms of the policies.    Manifestly Larkin did not limit his
acts to an inquiry into the cause of the fire and the amount of the
loss, and to an ascertainment thereof; but, after these acts were fully
completed to his own satisfaction, he, according to his own testimony,
offered and "had the insurance companies agree to pay" the full amount
of the loss as determined by Larkin.

The attitude of the insurance companies from the moment they acquired knowledge of plaintiff's failure to comply with the "iron-safe clause," and during all the negotiations with the plaintiff, was not that of one disclaiming liability, but rather that of one admitting liability. They, in effect, said to the plaintiff, "We will pay you the amount of your loss, according to the terms of the policy, as soon as we ascertain the cause of the fire and the amount of the loss." After the investigation was fully completed, they said, in effect: "We have now satisfied ourselves as to the cause of the fire and the amount of your loss; we find your loss to be $4,204.62, and under the policies, we are liable for $3,153.47, which we offer to pay you." The testimony of Larkin clearly and unquestionably leads to the conclusion that there never was any intent on his part, or on the part of either of the insurance companies, to assert that the policies were void for failure on the part of plaintiff to comply with the "iron-safe clause." The attitude of Larkin and both the insurance companies was that the companies were liable, and would pay the full amount which plaintiff was entitled to receive under the policies. Larkin's testimony discloses that the only point in dispute was the amount of the loss. The question of want of liability was never suggested. No suggestion was made that the policies were forfeited. The amount offered was not offered as a compromise. It was offered as payment for an obligation existing under the insurance contract. The defendant recognized the policy as being in full force and effect. It was willing to perform its primary obligation under the policy and pay the amount of the loss. Under these circumstances, the nonwaiver stipulation in its policy and the nonwaiver agreement will not avail or prevent the act of waiver from taking place.

As waiver is mainly a question of intention, it is ordinarily a question of fact, or a mixed question of law and fact, and is rarely to be inferred as a matter of law. But when the facts and circumstances relating to the subject are admitted or clearly established, and reasonable men, in the exercise of their reason and judgment, can draw but one inference therefrom, waiver becomes a question of law. 40 Cyc. 270, 271. See also Pennsylvania F. Ins. Co. v. Hughes, 47 C. C. A. 459, 108 Fed. 497; Hollings v. Banker's Union, 63 S. C. 192, 41 S. E. 90.

In the case at bar the facts relating to waiver were not in dispute. They were established, principally, by the testimony of defendant's representative Larkin. We believe that only one inference can be drawn from the undisputed facts, and that is that defendant, with full knowledge of plaintiff's noncompliance with the iron-safe clause, determined to waive such noncompliance and pay the amount of indemnity which plaintiff was entitled to receive under the policy. The amount of plaintiff's loss has been determined by a jury whose verdict is amply sustained by the evidence.

The defense of forfeiture for failure to comply with the provisions of the iron-safe clause must be specially pleaded. Ennis v. Retail Merchants Asso. Mut. F. Ins. Co. 33 N. D. 20, 156 N. W. 234. This defense was not pleaded in the original answer herein. And although, under the views expressed above, it is unnecessary to determine whether the proposed amendment to the answer should have been allowed, it may properly be observed that under our system of procedure, trial courts are vested with a broad judicial discretion with respect to the allowance of amendments. And it is firmly established that an appellate court will not interfere with the trial court's action except in case of a clear abuse of such discretion. Webb v. Wegley, 19 N. D. 606, 610, 125 N. W. 562. The authority vested in courts under the law to allow amendments to pleadings is conferred to promote the ends of justice, and should be liberally exercised by the courts to that end. The controlling principle in determining an application to amend is, or should be, whether the proposed amendment, if allowed, would further the ends of justice. Martin v. Luger Furniture Co. 7 N. D. 220, 77 N. W. 1003. In the case at bar the affidavit submitted in support of the application to amend presented no excuse whatever for the failure to assert the defense in the original answer. As we have already stated, the defendant was informed of the plaintiff's noncompliance with the iron-safe clause immediately after its adjuster arrived in Olga. The action was not commenced until more than one year after the adjuster had obtained this information. Under these circumstances, we would by no means feel justified in saying that the trial court erred in holding that an allowance of the proposed amendment would not be in furtherance of justice. But if the amendment had been allowed, we are wholly satisfied that, under the undisputed facts in this case, it must be held

that defendant has waived the right to assert the defense sought to be interposed thereby.

The judgment must be affirmed. It is so ordered.

BRUCE, Ch. J. I dissent.

## On Rehearing.

CHRISTIANSON, J. Defendant has filed a petition for rehearing wherein it asserts: (1) That the construction placed upon the iron-safe clause is too narrow; (2) that the acts of Larkin and the offer of payment made by him did not operate as a waiver; (3) that it was incumbent upon plaintiff to raise the question of waiver by way of reply; that the question was not so raised, or at all; (4) that we overlooked certain showing made by defendant's counsel in support of the motion to amend the answer; (5) that the evidence was insufficient to show that the plaintiff had sustained a loss, under the policies, for the amount of the verdict.

With respect to the first two propositions, it is sufficient to say that we have again considered the former opinion, and are wholly satisfied with what we there said with respect to the purpose of insurance contracts; the construction to be placed upon forfeiture provisions in such contracts, and waiver of such provisions.

Defendant is in error when it asserts that it was incumbent upon the plaintiff to raise the question of waiver by way of reply. In this state "a plaintiff is not required to reply to new matter in an answer not constituting a counterclaim, except by order of the court; but every allegation of new matter in the answer, not constituting a counterclaim, is deemed controverted by the plaintiff as upon a direct denial or avoidance by operation of law." Moores v. Tomlinson, 33 N. D. 638, 157 N. W. 685, Comp. Laws 1913, §§ 7467–7477 and 7452; Kingman v. Lancashire Ins. Co. 54 S. C. 599, 32 S. E. 762; Crittenden v. Springfield, F. & M. Ins. Co. 85 Iowa, 652, 39 Am. St. Rep. 321, 52 N. W. 548. See also Moody v. Amazon Ins. Co. 52 Ohio St. 12, 26 L.R.A. 313, 49 Am. St. Rep. 699, 38 N. E. 1011; 19 Cyc. 922, and authorities cited in notes 38, 39, 40, and 41.

As noncompliance with the iron-safe clause was not pleaded in the

38 N. D.—32.

answer, the question of waiver was not strictly an issue in this case. But, as stated in our former opinion, appellant anticipated this question, and devoted a considerable portion of its brief to argument and citation of authorities in support of the proposition that defendant had not waived the right to avail itself of the defense of noncompliance with the iron-safe clause. Appellant raised the question of waiver, and we are wholly satisfied with what we said with respect thereto in our former opinion.

It is asserted that in our former opinion we overlooked the oral statement made by defendant's counsel upon the hearing of the motion for leave to file an amended answer to the effect "that the answer in this case was prepared rather hurriedly, and that in preparing for trial, after talking to my client, I discovered that the answer as originally prepared did not set out all of the defenses to which the defendant was entitled and which was necessary to be pleaded as a defense so as to properly protect the rights of the defendant, and, accordingly, I prepared an amended answer." Whatever value was to be attributed to a statement of this kind was primarily for the trial court. A party who desires to apply to a trial court for leave to amend a pleading has the burden of sustaining his application, and should show some reason justifying or requiring the court to grant the amendment. The application is addressed to the court's discretion. The discretion should be exercised to promote the ends of justice. The presumption is that it was so exercised. On appeal it must be shown that the discretion has been abused. In this case we are agreed that an abuse of such discretion has not been shown.

It is true that appellant, in its specifications, assails the sufficiency of of the evidence as to the value of the stock of merchandise destroyed. But no further reference is made thereto, and no argument is presented in support thereof in the brief. Nor is it mentioned by appellant, as one of the issues presented for determination on this appeal. Hence under the well-settled rule that assignments not argued will be deemed abandoned, the specification of insufficiency of evidence as to the value of the stock of merchandise should be deemed abandoned. In this case, however, the point is without merit, as plaintiff's testimony is to the effect that the stock was worth to exceed $12,000 at the time of the fire.

A rehearing is denied.